UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PRASANNA ORUGANTI,

    Plaintiff,

          v.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,

    Defendants.

Case No. _____

## COMPLAINT FOR DECLRATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Plaintiff Prasanna Oruganti is a full-time international student from India with F-1 status who is pursuing a Ph.D. in agricultural engineering at The Ohio State University in Columbus, Ohio. She is one of hundreds, if not more, F-1 students nationwide whose SEVIS record has been abruptly and unlawfully terminated by U.S. Immigration and Customs Enforcement (ICE) last week, effectively stripping her of her ability to remain a student in the United States.

2. The Student and Exchange Visitor Information Systems (SEVIS) is a government database that tracks international students' compliance with their F-1

status. ICE, through the Student and Exchange Visitor Program (SEVP), uses SEVIS to monitor student status. On April 8, 2025, The Ohio State University's Office of International Affairs informed Ms. Oruganti that SEVP had terminated her SEVIS record, listing the reason for the termination as "Other - Individual identified in criminal records check and/or has had their visa revoked" with otherwise no citation to deportability provisions under the INA. Exhibit A, Email from OIA.

  3. The termination of a SEVIS record effectively ends F-1 student status. Even when a visa is revoked, however, ICE is not authorized to terminate Plaintiff's student status. The grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Ms. Oruganti's SEVIS record. An F-1 visa controls a student's entry into the country, not their continued lawful presence once admitted. Ms. Oruganti was in full compliance with the terms of her F-1 status and had not engaged in any conduct that would warrant termination of her status. Indeed, her only contact with the criminal legal system in the United States is a misdemeanor guilty plea for defective equipment in Missouri in 2020, for which she paid a fine of $300. Mo. Ann. Stat. § 307.170 (West).

  4. Rather, DHS's policy of unlawfully terminating SEVIS records based on visa revocations appears to be designed to coerce students, including Ms. Oruganti, into abandoning their studies and "self-deporting" despite not violating

2

their status. If ICE believes a student is deportable for having a revoked visa, it has the authority to initiate removal proceedings and make its case in court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

5. Over the past two weeks, ICE has terminated hundreds, maybe even thousands, of SEVIS records across the country, including at least 12 at The Ohio State University.[1] The SEVIS terminations have taken place against the backdrop of numerous demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students.

6. As a consequence of her SEVIS termination, Ms. Oruganti has been instructed by The Ohio State University Office of International Affairs to cease all on-campus employment. Ms. Oruganti is therefore no longer entitled to work as a teaching assistant and has lost her stipend for that work, causing her extreme

---

[1] Sheridan Hendrix, *Ohio State says not all international students remain in US as revoked visas climb to 12*, The Columbus Dispatch (Apr. 15, 2025), https://www.dispatch.com/story/news/education/2025/04/15/ohio-state-reports-12-revoked-student-visas-not-all-currently-in-u-s/83103125007/; Selig and Bennet, *The Trump Administration Revoked 800 Student Visas. Here is What To Know*, The New York Times (Apr. 11, 2025), https://www.nytimes.com/2025/03/27/us/students-trump-ice-detention.html.

financial hardship. Because her status has been unlawfully terminated, she is also now subject to detention and removal from the United States at any moment.

7. Plaintiff does not challenge the revocation of her visa in this action. Rather, Plaintiff brings this action under the Administrative Procedure Act (APA), the Fifth Amendment to the U.S. Constitution, and the Declaratory Judgment Act to challenge ICE's illegal termination of her SEVIS record.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the present action based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), and 28 U.S.C. § 2201-2 (authority to issue declaratory judgment when jurisdiction already exists).

9. Venue is properly with this Court pursuant to 28 U.S.C. § 1391(e) because this is a civil action in which Defendants are employees or officers of the United States, acting in their official capacity; Plaintiff resides in Columbus, Ohio; and there is no real property involved in this action.

## PARTIES

10. Prasanna Oruganti (hereinafter referred to as "Ms. Oruganti") is an Indian citizen and full-time Ph.D. student in the Department of Food, Agricultural, and Biological Engineering at The Ohio State University College of Engineering in Columbus, Ohio.

11. Defendant Kristi Noem is the Secretary of Homeland Security and has ultimate authority over DHS. In that capacity and through her agents, Defendant Noem has broad authority over the operation and enforcement of the immigration laws. Defendant Noem is sued in her official capacity.

12. Defendant Todd Lyons is the Acting Director of Immigration and Customs Enforcement and has authority over the operations of ICE. In that capacity and through his agents, Defendant Lyons has broad authority over the operation and enforcement of the immigration laws. Defendant Lyons is sued in his official capacity. ICE is responsible for the termination of Ms. Oruganti's SEVIS record. ICE is a subagency of DHS.

## LEGAL FRAMEWORK

13. Congress has authorized non-immigrant F-1 visas for international students who enroll in approved academic institutions. 8 U.S.C. § 1101(a)(15)(F)(i). Once admitted to the United States with F-1 status, an international student is granted permission to stay in the United States as long as they continue to meet the requirements of their visa classification by maintaining a full course of study or participating in authorized "practical training" following the completion of studies. 8 C.F.R. §§ 214.2(f)(6), 214.2(f)(10)(i).

14. The SEVIS is a centralized database maintained by the SEVP within

ICE. The SEVIS is used to manage information on nonimmigrant students and exchange visitors and track their compliance with the terms of their status. Only schools and ICE have access to SEVIS records. Students have no way to view or edit their own SEVIS record. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials (DSOs) must report through SEVIS to SEVP when a student fails to maintain status. SEVIS termination is governed by SEVP policy and regulations. Termination must be based on a student's failure to maintain status.

15. DHS regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status."

16. The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements, for example by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitutes a failure to maintain status."

17. With the respect to the crime of violence category, 8 C.F.R. §

214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Minor misdemeanor offenses do not meet this threshold for termination based on criminal history.

18. The second category, termination of status by DHS, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which permits DHS to terminate status only when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. DHS cannot otherwise unilaterally terminate nonimmigrant status.[2]

19. Accordingly, the revocation of an F-1 visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to the student's arrival to the United States, then a student may not enter, and the SEVIS record is terminated. However, the SEVIS record may not be terminated because of a visa revocation *after* a student has been admitted into the

---

[2] *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

United States, because the student is permitted to continue the authorized course of study.[3]

20. ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[4] Rather, if the visa is revoked, the student is permitted to pursue the course of study in school, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[5]

21. While a visa revocation *can* be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings.[6] The immigration judge may also even dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status.[7] Only when a final removal order is entered would status be lost.

22. A student who has not violated her F-1 status, even if her visa is

---

[3] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

[4] *Id*.

[5] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

[6] *See* 8 USC § 1227(a)(1)(B); 8 U.S.C. § 1201(i) (allowing immigration court review of visa revocation).
[7] 8 C.F.R. § 1003.18(d)(ii)(B).

8

revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any other deportability ground.

23. The immigration courts have no ability to review an F-1 student status SEVIS termination because the process is collateral to removal proceedings.[8] There is also no administrative appeal of a denial to reinstate F-1 status. The termination of a SEVIS record constitutes final agency action for purposes of APA review.[9]

24. If Defendants believe a student is deportable, they have the authority to initiate removal proceedings and make their case in court while the SEVIS record remains active and the student continues their coursework. Defendants cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

## FACTUAL ALLEGATIONS

25. Ms. Oruganti is an international student from India who attends The Ohio State University in Columbus, Ohio. She completed a bachelor's degree in

---

[8] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).
[9] *See Fang*, 935 F.3d at 185.

agriculture in India in 2017.

26. Ms. Oruganti is focused on her studies and she has not engaged in any significant political activity in the United States.

27. Ms. Oruganti was first admitted to the United States on an F-1 student visa on August 16, 2018, to study at Northwest Missouri State University in Maryville, Missouri.

28. DHS issued Ms. Oruganti a Form I-20 to enroll in a two-year master's program in agriculture at Northwest Missouri State. She graduated with her master's from Northwest Missouri State in May 2020.

29. Ms. Oruganti later applied for and received optional practical training (OPT).[10] She worked at Kansas State University as a research assistant for three months.

30. Ms. Oruganti then began a PhD program in August 2020 at Kansas State University in Manhattan, Kansas. She left the United States to return to India in February 2021 in pursuit of better job opportunities.

31. Ms. Oruganti returned to the United States in March 2022 to pursue an Master of Business Administration ("MBA") program from Campbellsville

---

[10] An F-1 student who has been lawfully enrolled in an approved institution on a full-time basis for one full academic year may be authorized for practical training. 8 C.F.R. § 213.2(f)(10). A student may apply to USCIS for authorization for temporary employment for optional practical training directly related to the student's major area of study. 8 C.F.R. § 214.2(f)(10)(ii)(A).

University. She attended classes in a hybrid format (virtual and in-person) while living in Kansas for three months and then from New Jersey where she moved to live with her now-husband. She was also authorized for employment through curricular practical training during this time. She visited India in April 2023 and returned to the United States on May 16, 2023. She decided to leave the MBA program because she was no longer interested in studying business and instead transferred to The Ohio State University in January 2024 to pursue a PhD in Agricultural Engineering.

32. DHS issued Ms. Oruganti a Form I-20 to pursue a five-year PhD program in agricultural engineering with a start date of January 8, 2024. Exhibit B, Form I-20. Ms. Oruganti has been engaged in a full course of studies since. She has completed three semesters in her first year and currently is in her second year. Her area of research focuses on how farm management practices impact soil health, fertility, and structure. Ms. Oruganti hopes to use her PhD to collaborate with farmers to implement soil management reforms.

33. On April 8, 2025, Ms. Oruganti received notice from the Ohio State University Office of International Affairs (OIA) that her SEVIS status had been terminated, and that the reason given for the termination was "Other - Individual identified in criminal records check and/or has their VISA revoked." The email from OIA further stated: "Since your SEVIS record has been terminated by SEVP,

11

this indicates the U.S. government believes you have violated your F-1 status."

34. Ms. Oruganti is unaware of the factual basis for the termination of her SEVIS status.

35. Ms. Oruganti's only criminal history is a June 16, 2020, conviction for minor property damage in Maryville, Missouri. Ms. Oruganti paid a $300 fine and pled guilty to a defective equipment charge. Defective equipment is a minor misdemeanor that does not even accrue points on one's driver's license. Mo. Ann. Stat. § 307.170 (West).

36. Ms. Oruganti is highly valued by her college, which desires for her to continue to be enrolled in school. However, Ms. Oruganti's ability to do so is in jeopardy due to the termination of her SEVIS record and status.

37. Since she received notice of her SEVIS termination, Ms. Oruganti has been experiencing high levels of stress and anxiety. She is unsure of what will happen to her. She is no longer authorized to work as a teaching or research assistant and has lost her stipend from the university—her only source of income. Although DHS has not yet initiated removal proceedings against her, she is at risk of being detained and removed from the United States at any time; other students whose visas have been revoked or SEVIS status terminated have been detained and placed in removal proceedings, and she fears a similar fate.

38. The SEVIS terminations have created havoc and uncertainty for schools as well. Upon information and belief, Ms. Oruganti's college was not given any advanced warning or further explanation for the termination of Ms. Oruganti's SEVIS status. Schools are scrambling to respond to these unprecedented actions and determine whether and how they can help their international students.[11]

39. Intervention by the Court is necessary to remedy Defendants' illegal conduct.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Administrative Procedure Act**
*(Unauthorized SEVIS Termination)*

40. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

41. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of

---

[11] *See* Liam Knox, *How Trump is Wreaking Havoc on the Student Visa System*, Inside Higher Ed, April 5, 2024, https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system.

statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C)-(D).

42. Defendants have no statutory or regulatory authority to terminate Ms. Oruganti's SEVIS record or status based simply on revocation of a visa. Additionally, nothing in Ms. Oruganti's criminal history or other history provides a basis for termination.

43. Therefore, Defendants' termination of Ms. Oruganti's SEVIS status is not in accordance with law, in excess of statutory authority, and without observance of procedure required by law.

## SECOND CAUSE OF ACTION

### Fifth Amendment
*(Procedural Due Process)*

44. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

45. Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

46. Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations. Because these regulations impose mandatory constraints on agency

14

action and because SEVIS registration is necessary for a student to remain enrolled as an international student, Ms. Oruganti has a constitutionally protected property interest in her SEVIS registration. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

47. Defendants terminated Plaintiff's SEVIS record based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

## THIRD CAUSE OF ACTION

**Administrative Procedure Act**
*(Arbitrary and Capricious SEVIS Termination)*

48. Plaintiff incorporates the allegations in the paragraphs above as though fully set forth here.

49. Under § 706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," including if it fails to make a rational connection between the facts found and the decision made. 5 U.S.C. § 706(2)(A).

50. Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiff's SEVIS status in violation of the APA, let alone any rational connection between the facts found and the decision made.

51. Defendants' action is therefore arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that the termination of Plaintiff's SEVIS status was unlawful;

(3) Vacate and set aside DHS's termination of Plaintiff's SEVIS status;

(4) Order that Defendants restore Plaintiff's SEVIS record and status;

(5) Enjoin Defendants from detaining Plaintiff during the pendency of the instant case;

(6) Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b); and

(7) Grant such further relief as the Court deems just and proper.

Dated: April 16, 2025

Respectfully submitted,


_____/s/Emily Brown
Emily Brown (OH # 92553)
Moritz Clinical Programs
The Ohio State University Moritz College of Law

16

PO Box 10095
Columbus OH 43201
Brown.4485@osu.edu
(631) 897-9699

Kathleen Kersh (OH # 91198)
Advocates for Basic Legal Equality
130 West 2nd Street, Suite 700
Dayton, OH 45402
kkersh@ablelaw.org
(937) 535-4408

## **CERTIFICATE OF SERVICE**

I, undersigned counsel, hereby certify that I filed the foregoing Complaint for Injunctive, and Declaratory Relief and all attachments using the CM/ECF system, which will send a notice of electronic filing (NEF) to all counsel of record. I will furthermore mail a copy of the complaint and all attachments via USPS Certified Priority Mail, along with corresponding summons, to the following individuals:

Kristi Noem, Secretary
U.S. Department of Homeland Security
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

Todd Lyons, Acting Director of ICE
Office of the Principal Legal Advisor,
Immigration and Customs Enforcement
500 12th St. SW, Washington, D.C. 20536

Kelly A. Norris, Acting U.S. Attorney for the Southern District of Ohio
303 Marconi Blvd, Suite 200
Columbus, OH 43215

Merrick Garland, Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

Dated: April 16, 2025

By: */s/ Emily Brown*
*Counsel for Plaintiff*