IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PRASANNA ORUGANTI, | : | |
| | : | CASE NO. 2:25-cv-00409 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| KRISTI NOEM, Secretary, | : | |
| United States Department of | : | |
| Homeland Security, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

---

Defendants Kristi Noem, Secretary, United States Department of Homeland Security (DHS), and Todd Lyons, Acting Director, United States Immigration and Customs Enforcement (ICE), sued in their official capacities, hereby oppose Plaintiff's Motion for a Preliminary Injunction[1] filed by Plaintiff Prasanna Oruganti.

Respectfully submitted,

KELLY A. NORRIS
ACTING UNITED STATES ATTORNEY

s/Christopher R. Yates
CHRISTOPHER R. YATES (0064776)
Assistant United States Attorney
Attorney for Defendants
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Christopher.Yates@usdoj.gov

---

[1] On this date of filing Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction, April 25, 2025, party Defendants confirmed with the undersigned that ICE is developing a policy that will provide a framework for SEVIS record terminations. Until such a policy is issued, the SEVIS records for plaintiff in this case (and other similarly situated plaintiffs) will **remain Active or shall be re-activated** if not currently active and **ICE will not modify the record solely based on the NCIC finding that resulted in the recent SEVIS record termination**. ICE still maintains the authority to terminate a SEVIS record for other reasons, such as if a student fails to maintain his or her nonimmigrant status after the record is reactivated or engages in other unlawful activity that would render him or her removable from the United States under the Immigration and Nationality Act.  Given the narrow nature of this action – a re-activation of Ms. Oruganti's SEVIS record, which re-activation has already taken effect pursuant to this Court's grant of TRO – the foregoing policy will render this action "moot."

STATUTORY AND REGULARTORY FRAMEWORK ............................................................ 10

I.    The F-1 Nonimmigrant Student Classification ................................................. 10

Immigration and Nationality Act (INA) 8 U.S.C. § 1101(a)(15)(F)(i)

*Bitar v. U.S. Dep't of Justice*, 582 F. Supp. 417 (D. Colo. 1983)

8 C.F.R. § 214.2(f)(1)(i)

*Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006)

8 C.F.R. § 214.2(f)(5)

USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act"

8   C.F.R. § 239.3

II.   The Student and Exchange Visitor Information System (SEVIS) .................................... 11

8 U.S.C. § 1372(a)(1)

Privacy Act of 1974

Declaration of Andre R. Watson, Asst. Dir., Nat'l Security Div., Homeland Security Investigations, ICE, DHS, signed April 17th, 2025

8 C.F.R. § 214.1(d)

8 C.F.R. § 214.1(f)

8 C.F.R. § 214.2(e)-(g)

8 U.S.C. § 1182(d)(3) or (4)

ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010)

Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).

86 ed. Reg. 69663 (Dec. 8, 2021)

III.  The Privacy Act of 1974 ................................................................................................. 13

The Privacy Act of 1974, Pub Law No. 93-579, 88 Stat 1896 (Dec. 31, 1974)

5 U.S.C. § 552a (2018)

Pub. L. 93–579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes

5 U.S.C. § 552a

5 U.S.C. § 552a(a)(5)

5 U.S.C. § 552a(b)-(d)

5 U.S.C. § 552a(d)(1)-(4)

5 U.S.C. § 552a(g)(1)(A)

5 U.S.C. § 552a(d)(3)

5 U.S.C. § 552a(g)(2)

5 U.S.C. § 552a(g)(1)(B)

5 U.S.C. § 552a(g)(1)(C)

5 U.S.C. § 552a(g)(1)(D)

5 U.S.C. § 552a(a)(2)

5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282

82 Fed. Reg 7860-61 (Jan. 23, 2017)

84 Fed. Reg. 3493-94 (Feb. 12, 2019)

FACTUAL BACKGROUND ............................................................................................... 14

I.    Plaintiff ...................................................................................................................... 14

Decl. Prasanna Oruganti, ECF No. 2-1

Federal Rule of Civil Procedure 12(b)(6)

*In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455 (6th Cir. 2014)

INA 8 U.S.C. § 221(g)

INA 8 U.S.C. § 1201(g)

II.   Plaintiff's Complaint ................................................................................................ 16

Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), (C)-(D)

APA 5 U.S.C. § 706(2)(A)

Due Process Clause of the Fifth Amendment of the United States Constitution

STANDARDS OF REVIEW ...................................................................................................16

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001)

*Munaf v. Geren*, 553 U.S. 674 (2008)

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)

*Patel v. Glenn*, 2022 WL 16647974 (6th Cir. Nov. 3, 2022)

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981)

*Eads v. Tennessee*, 2019 WL 2443125 (M.D. Tenn. June 12, 2019)

*Schrier v. Univ. of Colo.*, 427 F.3d 1253 (10th Cir. 2005)

*G.S. by & through Schwaigert v. Lee*, 560 F. Supp. 3d 1113 (W.D. Tenn. 2021)

*Sandison v. Mich. High School Athletic Ass'n*, 64 F.3d 1026 (6th Cir. 1995)

*Overstreet v. Lexington-Fayette Urban County Government,* 305 F.3d 566 (6th Cir.2002)

*McPherson v. Michigan High School Athletic Ass'n,* 119 F.3d 453 (6th Cir.1997) (*en banc* )

*United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341 (6th Cir. 1998)

*Ohio v. Becerra*, 2022 WL 413680 (6th Cir. Feb. 8, 2022)

*D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324 (6th Cir. 2019)

*Doe v. Rhodes Coll.*, 2016 WL 11611619 (W.D. Tenn. Oct. 25, 2016)

*McKay v. Federspiel*, 2014 WL 1400091 (E.D. Mich. Apr. 10, 2014)

*Detroit Newspaper*, 471 F.2d 872 (6th Cir. 1972)

*Decorative Stone Co. v. Bldg. Trades Council of Westchester Cnty.*, 13 F.2d 123 (2d Cir. 1926)

*First Nat'l Bank & Tr. Co. of Mich. v. Fed. Rsrv. Bank of Chi. Detroit Branch*, 495 F. Supp. 154 (W.D. Mich. 1980)

*N.W. Controls, Inc. v. Outboard Marine Corp.*, 317 F. Supp. 698 (D. Del. 1970)

*Marilley v. McCamman*, 2011 WL 4595198 (N.D. Cal. Oct. 3, 2011)

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007)

*McDonald's Corp. v. Robertson*, 147 F.3d 1301 (11th Cir. 1998)

*Harris v. Wells Fargo Bank, N.A.*, 2018 WL 4896727 (W.D. Tenn. Oct. 9, 2018)

*Cobell v. Norton*, 391 F.3d 251 (D.C. Cir. 2004)

*Nken v. Holder*, 556 U.S. 418 (2009)

*Virginian R. Co. v. United States*, 272 U.S. 658 (1926)

ARGUMENT ................................................................................................................19

I.    There is no case or controversy before the Court because SEVP did not terminate Ms.
      Oruganti's F-1 nonimmigrant status ............................................................. 19

      8 C.F.R. § 214.1(d)

      8 U.S.C. § 1229a

      USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful
      Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act"

      8 U.S.C. § 239.3

      *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487 (W.D. Va. Oct. 16, 2018)

II.   The Government has not waived sovereign immunity under the APA for Ms. Oruganti's
      challenge to the contents of her SEVIS record ............................................ 20

      Privacy Act of 1974

      5 U.S.C. § 702

      *Cambranis v. Blinken*, 994 F.3d 457 (5th Cir. 2021)

      *Lane v. Pena*, 518 U.S. 187 (1996)

      *FDIC v. Meyer*, 510 U.S. 471 (1994)

      *United States* v. *Sherwood*, 312 U.S. 584 (1941)

      *Nishimura Ekiu v. United States*, 142 U.S. 651 (1892)

      *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012)

5 U.S.C. § 552a(b)

5 U.S.C. § 552a(d)(1)-(4)

5 U.S.C. § 552a(g)(1)(A)

5 U.S.C. § 552a(d)(2)

5 U.S.C. § 552a(f)

*Quinn v. Stone*, 978 F.2d 126 (3d Cir. 1992)

5 U.S.C. §§ 552a(g)(1)-(5)

*Block v. North Dakota*, 461 U.S. 273 (1983)

H.R. Report 93-1416 (Oct. 2, 1974)

S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., Legislative History of the Privacy Act of 1974 S. 3418 (Public Law 93-579)

Privacy Sourcebook (Comm. Print 1976)

Congressional Record—Senate, Dec 17, 1974— Senate Considers House Substitute of Text of H.R. 16373 to S. 3418 and Adopts Compromise Amendments Identical to those Considered in House

5 U.S.C. § 702

5 U.S.C. § 552a(a)(2)

5 U.S.C. § 552a note.

82 Fed. Reg 7860-61 (Jan. 23, 2017)

84 Fed. Reg. 3493-94 (Feb. 12, 2019)

*Raven v. Panama Canal Co*., 583 F.2d 169 (5th Cir. 1978)

*El Badrawi v. Dep't of Homeland Sec.*, 579 F.Supp.2d 249 (D. Conn. 2008)

*Westcott v. McHugh*, 39 F. Supp. 3d 21 (D.D.C. 2014)

*Touchstone Rsch. Grp. LLC v. United States*, 2019 WL 4889281 (S.D.N.Y. Oct. 3, 2019)

5 U.S.C. § 552a(2)-(3)

5 U.S.C. § 552a(d)(3)

*Taylor v. U.S. Treas. Dep't*, 127 F.3d 470 (5th Cir. 1997)

*Hill v. Air Force,* 795 F.2d 1067 (D.C. Cir. 1986)

*Barouch v. United States DOJ*, 962 F. Supp. 2d 30 (D.D.C. 2013)

III.   <u>SEVP's change to Ms. Oruganti's SEVIS record is not a final agency action record</u> .... 26

5 U.S.C. § 706

*Bennett v. Spear*, 520 U.S. 154 (1997)

*Nat'l Veterans Legal Servs. Program v. United States DOD*, 990 F.3d 834 (4th Cir. 2021)

*Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186 (4th Cir. 2013)

*Holistic Candlers and Consumer's Ass'n v. FDA*, 664 F.3d 940 (D.C. Cir. 2012)

8 U.S.C. § 1372

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487 (W.D. Va. Oct. 16, 2018)

*Yerrapareddypeddireddy v. Albence*, 2021 U.S. Dist. LEXIS 221212 (D. Ariz. Nov. 16, 2021)

8 C.F.R. § 214.1(d)

*Textron Inc. v. Comm'r of Internal Revenue*, 336 F.3d 26 (1st Cir. 2003)

8 U.S.C. § 1201(i)

8 C.F.R. § 214.2(f)

8 U.S.C. § 1372(a)(1)

*Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8 (D.C. Cir. 2005)

IV.   <u>Ms. Oruganti cannot establish a likelihood of success on the merits of her due process claim in her second cause of action</u> ........................................................................................... 29

Due Process Clause of the Fifth Amendment of the United States Constitution

*Air Sunshine, Inc. v. Carl*, 663 F.3d 27 (1st Cir. 2011)

*González–Droz v. González–Colón*, 660 F.3d 1 (1st Cir. 2011)

*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487 (W.D. Va. Oct. 16, 2018)

*S.M. v. Del. Dep't of Educ.*, 77 F. Supp. 3d 414 (D. Del. 2015)

*Fan v. Brewer*, 2009 WL 1743824 (S.D. Tex. June 17, 2009)

*Doe 1 v. U.S. Dep't of Homeland Sec.*, 2020 WL 6826200 (C.D. Cal. Nov. 20, 2020)

*Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849 (9th Cir. 2021)

*Bakhtiari v. Beyer*, 2008 WL 3200820 (E.D. Mo. Aug. 6, 2008)

8 C.F.R. § 214.3

8 C.F.R. §214.4

V.   Ms. Oruganti cannot establish irreparable harm ............................................................ 30

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)

*Ohio v. Becerra*, 2022 WL 413680 (6th Cir. Feb. 8, 2022)

*D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324 (6th Cir. 2019)

*Nken v. Holder*, 556 U.S. 418 (2009)

*Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120 (9th Cir. 2024)

USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act"

8 U.S.C. § 239.3

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015)

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013)

*Pom Wonderful LLC v. Pur Beverages LLC*, 2015 WL 10433693 (C.D. Cal. Aug. 6, 2015)

*Vaqueria Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464 (1st Cir. 2009)

8 C.F.R. § 214.2(f)(1)(i)(B)

*Spadone v. McHugh*, 842 F. Supp. 2d 295 (D.D.C. 2012)

VI.   The balance of equities and public interest favor the Government ............................... 33

*Nken v. Holder*, 556 U.S. 418 (2009)

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742 (9th Cir. 1992)

*United States v. Martinez-Fuerte*, 428 U.S. 543 (1976)

*Lopez-Mejia v. Lynch*, 2017 WL 25501 (S.D. Ohio Jan. 3, 2017)

*Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211 (D.C. Cir. 1981)

8 U.S.C. §§ 1103(a)

8 U.S.C. § 1184(a)(1)

8 U.S.C. § 1372

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977)

CONCLUSION ............................................................................................................... 34

## INTRODUCTION

Enforcing the immigration laws of the United States is the sovereign prerogative of the Executive Branch. In executing this enforcement mission as it relates to nonimmigrant (or temporary) foreign students, Congress mandated that the Department of Homeland Security ("DHS"), through U.S. Immigration and Customs Enforcement ("ICE") and the Student Exchange Visitor Program ("SEVP") "develop and conduct a program" to collect certain information from approved institutions of higher education in the United States with respect to aliens seeking F-1 student status. *See* 8 U.S.C. § 1372. Under this authority, DHS (ICE and SEVP) established the Student Exchange Visitor Information System ("SEVIS"). Congress charged ICE with the authority to administer this program, and specified that ICE "*shall* use such information to carry out the enforcement functions of the agency." 6 U.S.C. § 252(a)(4) (emphasis added). The Plaintiff in this case, Ms. Oruganti, who holds F-1 student status, is challenging SEVP's change of her record in the SEVIS database from "active" to "terminated." In doing so, SEVP did not delete Ms. Oruganti from the database or terminate her

F-1 nonimmigrant student status.[2] Moreover, at this time, ICE has not charged Ms. Oruganti as being deportable. Thus, Ms. Oruganti suffers from no irreparable injury and her complaint and request for emergency relief from this Court is based upon a faulty premise and her misunderstanding of U.S. immigration laws.

The Court should deny Ms. Oruganti's request for preliminary injunctive relief because at the threshold, the Court lacks jurisdiction over her claim for correction of an entry in a government database. The Privacy Act applies to Ms. Oruganti's request for relief and precludes review under the Administrative Procedure Act ("APA"). Moreover, APA review is unavailable here because there is no final agency action before the Court. But even if this was not the case, the Court should still deny Ms. Oruganti's preliminary injunction request because she cannot satisfy any of the requirements necessary for the extraordinary remedy of a preliminary injunction.

First, Ms. Oruganti has no likelihood of success on her Fifth Amendment claim that SEVP's change of her record in SEVIS violates due process because courts have held that an alien has no property interest in a SEVIS record. *See, e.g.*, *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ*., 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018).

Second, Ms. Oruganti has failed to establish any immediate, irreparable injury. Ms. Oruganti's claim of injury by being "now subject to detention and remove from the United States at any moment," (Pl.'s Compl., ECF No. 1, PAGEID #: 3-4, ¶6), is not only speculative, but it also "cannot constitute the requisite irreparable injury" necessary for preliminary injunctive relief. *See, e.g., Nken v. Holder*, 556 U.S. 418, 435 (2009). Moreover, Ms. Oruganti's claim that she is being "coerce[d]..into abandoning [her] studies and 'self-deporting,'" (Pl.'s Compl., ECF No. 1, PAGEID #: 2-3, ¶4), is at best an exaggeration as she has failed to demonstrate that she is unable to transfer

---

[2] Ms. Oruganti "does not challenge the revocation of her visa in this action. Rather, Plaintiff brings this action under the APA, the Fifth Amendment to the U.S. Constitution, and the Declaratory Judgment Act to challenge ICE's illegal termination of her SEVIS record." Pl.'s Compl., ECF No. 1, PAGEID #: 4, ¶7.

her completed credits and other accomplishments from The Ohio State University to another college or university either in her home country or in another country (*e.g.*, Canada) and complete her Ph.D. program. And Ms. Oruganti's assertion that her school's decision to end her stipend puts her in "extreme financial hardship," (*id*. at ¶6), cannot constitute an irreparable injury because she fails to indicate why the loss of the stipend "is so great as to threaten the existence of [the equivalent] of [her] business," *see Vaqueria Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464, 485 (1st Cir. 2009), when a foundational requirement for eligibility for F-1 student status is demonstration of the ability to independently cover all costs while present in the United States. *See* 8 C.F.R. § 214.2(f)(1)(i)(B).

Finally, the public interest weighs heavily against injunctive relief because the Executive's ability to enforce U.S. immigration laws is not only significant but also a sovereign prerogative.

For these reasons, as set forth below, the Court should deny Ms. Oruganti's request for a preliminary injunction in its entirety.

<div align="center">STATUTORY AND REGULATORY FRAMEWORK</div>

## I. The F-1 Nonimmigrant Student Classification

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of an alien, who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i) (hereinafter, "F-1 status").[3] As relevant here, to be admitted in F-1 status, an applicant must present a Form I-20, issued by a certified school in the student's name; present documentary evidence of financial support; and demonstrate he or she intends to attend the school

---

[3] To qualify for F-1 nonimmigrant status, a foreign national is required to (1) apply and gain admission to an approved U.S. educational institution, (2) obtain a "Certificate of Eligibility for Nonimmigrant (F-1) Student Status" (a "Form I-20"), issued by the school, and (3) submit a visa application at the U.S. Embassy or Consulate abroad. *See, e.g., Bitar v. U.S. Dep't of Justice*, 582 F. Supp. 417, 418-19 (D. Colo. 1983).

specified on the student's visa. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, a nonimmigrant student must "pursue a full course of study" or "engage in authorized practical training." *Id.* § 214.2(f)(5)(i).

Individuals admitted in F-1 status are permitted to remain in the United States for the duration of status (or "D/S"), *see Silva v. Gonzales*, 463 F.3d 68, 69 (1st Cir. 2006), which "is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies." 8 C.F.R. § 214.2(f)(5). An F-1 student admitted for the duration of status found to have violated her status does not begin to accrue unlawful presence until the day after a request for another immigration benefit is denied by U.S. Citizenship and Immigration Services ("USCIS"), or during removal proceedings, the day after an Immigration Judge enters an order that the alien violated her nonimmigrant status. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited Apr. 24, 2025); *see also* 8 C.F.R. § 239.3.

## II. The Student and Exchange Visitor Information System (SEVIS)

In order to enhance the integrity of the immigration system in the wake of the September 11, 2001, terrorist attacks, Congress mandated that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . develop and conduct a program to collect [certain information] from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. §

1372(a)(1). Accordingly, the Secretary of Homeland Security created SEVIS, "which is a web-based system that DHS, through the Student and Exchange Visitor Program ("SEVP") "uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." *See* "ICE, Student and Exchange Visitor Information System," found online at: https://www.ice.gov/sevis/overview (last visited Apr. 24, 2025). Under 8 U.S.C. § 1372, Congress has provided DHS, through SEVP, with broad authority to administer SEVIS. Moreover, Congress directed that ICE "shall use such information [collected through the program] to carry out the enforcement functions of the agency." 6 U.S.C. § 252(a)(4). Notably, SEVP's termination of an alien's record in SEVIS does not terminate that person's nonimmigrant status in the United States. Declaration of Andre R. Watson, Asst. Dir., Nat'l Security Div., Homeland Security Investigations, ICE, DHS, signed April 17th, 2025, ¶ 11, hereinafter Watson Decl. Moreover, the statute does not provide SEVP the authority to terminate an alien's nonimmigrant status by terminating her SEVIS record. *Id.*

Termination of status is warranted under several circumstances. 8 C.F.R. § 214.1(d). Students can fail to maintain status in violation of their status requirement outlined in 8 C.F.R. § 214.1(f). Additionally, 8 C.F.R. § 214.2(e)-(g) delineates the specific circumstances under which certain conduct by any nonimmigrant visa holder "constitutes a failure to maintain status," such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than one year.

A termination of status initiated by DHS is governed by 8 C.F.R. § 214.1(d) and provides that DHS shall terminate status when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3)

DHS published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

In accordance with the Privacy Act of 1974, DHS "modif[ed], rename[d] and reissue[d]" the SEVIS database as "DHS/ICE–001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* 86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States.").

### III.   The Privacy Act of 1974

The Privacy Act of 1974, Pub Law No. 93-579, 88 Stat 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a (2018), establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. *See* Pub. L. 93–579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes)). The Privacy Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. *See generally*, 5 U.S.C. § 552a. A system of records is defined by statute as a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual. 5 U.S.C. § 552a(a)(5). The Privacy Act sets forth agency record-keeping requirements, places restrictions on disclosure of information, and provides a means for individuals to access their records and seek correction of inaccurate information in those records. *Id.* §§ 552a(b)-(d).

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. 5 U.S.C. § 552a(d)(1)-(4). After following the required steps to exhaust administrative remedies, a final determination by the agency

head triggers the civil remedy provisions of §552a(g)(1)(A). *Id.* at (d)(3).

The district courts have jurisdiction over any action brought pursuant to the civil remedy provisions of subsection (g) including an action to correct a record. *Id., § 552a(g)(1)*. In an action to correct a record, the court can order the agency to make the correction and can assess costs and fees against the United States if the complainant substantially prevails. *Id. § 552a(g)(2)*. Actions may also be brought to compel access to a record or for damages in certain instances. *Id. §§ 552a(g)(1)(B)*, (g)(1)(C), (g)(1)(D).

The Privacy Act limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* at 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. The countries that have been designated pursuant to that amendment are the United Kingdom and majority of the countries of the European Union. 82 Fed. Reg 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019).

## FACTUAL BACKGROUND

### I. Plaintiff

Ms. Oruganti is a national of India. Pl.'s Compl., ECF No. 1, PAGEID #: 4, 9-10, ¶¶ 10, 25. She was first admitted to the United States on an F-1 student visa on August 16, 2018, to study at Northwest Missouri State University. *Id.* ¶27.

Ms. Oruganti alleges that her "only criminal history is a June 16, 2020, conviction for minor property damage in Maryville, Missouri. [She] paid a $300 fine and pled guilty to a defective equipment charge. Defective equipment is a minor misdemeanor that does not even accrue points on one's driver's license. (citation omitted). *Id.* ¶35; *see also* Decl. Prasanna Oruganti, ECF No. 2-1,

¶17.

Ms. Oruganti elaborated further on this event in her declaration attached to and filed with her

Motion for a Temporary Restraining Order, (ECF No. 2):

> On March 3, 2020, I was trying to make a left turn from the front side of a store to enter the road when I misjudged the distance while turning. As a result, the front left side of my car (the driver's side) lightly touched the decorative bricks placed in front of the store. The store appeared closed, so I called it the next day to report the incident, and a store employee told me one of the decorative bricks had fallen. I also promptly contacted my insurance company to report the situation and ensure that any property damage would be covered. Shortly after the incident, I was instructed to appear in court on a designated date. I pleaded guilty to the charge and paid a $300 fine. The public prosecutor clarified that it was a minor traffic violation and assured me that no points would be deducted from my driver's license.

Decl. Prasanna Oruganti, ECF No. 2-1, ¶18.

Ms. Oruganti's recitation of the foregoing event, and its consequences comports in all relevant

respect with Defendant DHS' information, and ultimately the basis for termination of her SEVIS

record:

> [Plaintiff's] information was run against criminal databases and was a verified match to a criminal history record for an arrest on March 3, 2020, for Leaving the Scene of an Accident in Maryville, MO.  At that time, the records showed a guilty disposition on June 16, 2020.

> On April 7, 2025, [the Counter Threat Lead Development Unit, a component of Homeland Security Investigations' National Security Division] received communication from the Department of State, indicating that [Plaintiff's] visa was expired and requested termination of the SEVIS record.

> Based on [Plaintiff's] criminal history on April 8, 2025, [the Student and Exchange Visitor Program] set [Plaintiff's] SEVIS record to "terminated."

*See* Watson Decl., ¶¶7-9.

Ms. Oruganti confirms that "[o]n April 8, 2025, Plaintiff received notice from the Ohio State

University Office of International Affairs (OIA) that her SEVIS status had been terminated, and that

the reason given for the termination was 'Other - Individual identified in criminal records check

and/or has their VISA revoked.' The email from OIA further stated: 'Since your SEVIS record has

been terminated by SEVP, this indicates the U.S. government believes you have violated your F-1

15

status.'" ECF No. 1, ¶33.

Ms. Oruganti attests, pursuant to her Complaint, that she "is unaware of the factual basis for the termination of her SEVIS status." *Id.* ¶34.

## II. Plaintiff's Complaint

On April 16, 2025, Ms. Oruganti filed her complaint. *Id.* She brings three causes of action:

1) Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C)-(D), claiming Defendants "have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status based simply on revocation of a visa." *Id.* ¶¶40–43.

2) APA, 5 U.S.C. § 706(2)(A), alleging the termination of her SEVIS record was unlawful, arbitrary and capricious, and in violation of law. *Id.* ¶¶48–51.

3) Violation of her procedural due process rights pursuant to the Due Process Clause of the Fifth Amendment, claiming a "constitutionally protected property interest in her SEVIS registration," that Defendants terminated "on improper grounds without prior notice and without providing Plaintiff an opportunity to respond." *Id.* ¶¶44–47.

Her prayer for relief includes instruction to this Court to "declare the termination of [her] SEVIS status unlawful," and to "vacate and set aside" that SEVIS termination, and order Defendants to restore same. And, also, to "[e]njoin Defendants from detaining Plaintiff during the pendency of the instant case." *Id.* "Prayer for Relief."

## STANDARD OF REVIEW

The standard for issuing a TRO is substantially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is an 'extraordinary remedy,' not a matter of right." *Patel v. Glenn*, No. 21-3499, 2022 WL 16647974, at *3 (6th Cir. Nov. 3, 2022) (citing *Winter*, 555 U.S. at 24).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties

16

until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

"Preliminary injunctions that alter the status quo are specifically disfavored." *Eads v. Tennessee*, No.

1:18-CV-00042, 2019 WL 2443125, at *1 (M.D. Tenn. June 12, 2019) (citing *Schrier v. Univ. of

Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005)). Ultimately, a preliminary injunction is only awarded

upon a "clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Courts consider four factors when determining whether to issue a preliminary injunction:

> (1) whether the movant has shown a strong likelihood of success on the merits;
>
> (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;
>
> (3) whether the issuance of a preliminary injunction will cause substantial harm to third parties; and
>
> (4) whether the public interest would be served by the issuance of a preliminary injunction.

*G.S. by & through Schwaigert v. Lee*, 560 F. Supp. 3d 1113, 1121 (W.D. Tenn.

2021) (citing *Sandison v. Mich. High School Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995); *see

also Overstreet v. Lexington-Fayette Urban County Government,* 305 F.3d 566, 573 (6th

Cir.2002); *McPherson v. Michigan High School Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir.1997) (*en

banc* ). The factors are balanced against each other, and proving all four is not necessary to secure a

preliminary injunction. *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit

Auth.*, 163 F.3d 341, 347 (6th Cir. 1998). Notwithstanding that balancing, "the *existence* of an

irreparable injury is mandatory." *Ohio v. Becerra*, No. 21-4235, 2022 WL 413680, at *2 (6th Cir.

Feb. 8, 2022) (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)). "The Sixth

Circuit has stated that the district court need not 'make specific findings concerning each of the four

factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the

issue.' " *Doe v. Rhodes Coll.*, No. 2:16-cv-02308-JTF-tmp, 2016 WL 11611619, at *4 (W.D. Tenn.

Oct. 25, 2016)

Also, courts routinely decline to issue injunctive relief when they cannot yet resolve novel and complex issues of law or fact. *McKay v. Federspiel*, No. 14-cv-10252, 2014 WL 1400091, at *12 (E.D. Mich. Apr. 10, 2014) (denying preliminary injunctive relief when the Court lacked the requisite facts to make necessary conclusions of law); *see also Detroit Newspaper*, 471 F.2d 872, 876 (6th Cir. 1972) (noting that injunctive relief is available only when the right is "clear," and injunctions should not be awarded in doubtful cases); *Decorative Stone Co. v. Bldg. Trades Council of Westchester Cnty.*, 13 F.2d 123, 123 (2d Cir. 1926) (noting that in the presence of "debatable questions, it is within the discretion of the court to refuse to grant a preliminary injunction on affidavits"); *First Nat'l Bank & Tr. Co. of Mich. v. Fed. Rsrv. Bank of Chi. Detroit Branch*, 495 F. Supp. 154, 157 (W.D. Mich. 1980) ("It is the Court's opinion that there can be no substantial likelihood of success where there exist complex issues of law, the resolution of which are not free from doubt."); *N.W. Controls, Inc. v. Outboard Marine Corp.*, 317 F. Supp. 698, 703 (D. Del. 1970) (finding no likelihood of success when "on the present record serious conflicts of both a factual and legal nature exist"); *Marilley v. McCamman*, No. C-11-02418, 2011 WL 4595198, at *1 (N.D. Cal. Oct. 3, 2011) ("In circumstances where the court finds that it cannot yet resolve 'doubtful and difficult questions of law or disputed questions of fact,' however, a preliminary injunction may not issue.").

Finally, "[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)); *see also Harris v. Wells Fargo Bank, N.A.*, No. 2:18-CV-2400-JPM-dkv, 2018 WL 4896727, at *1 (W.D.

Tenn. Oct. 9, 2018) ("A preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits, but if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required.") (quoting *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004)).

As the Supreme Court has articulated, "[a] stay is not a matter of right, even if irreparable injury might otherwise result" but is instead an exercise of judicial discretion that depends on the particular circumstances of the case. *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian R. Co. v. United States*, 272 U.S. 658, 672 (1926)).

## ARGUMENT

## I.   THERE IS NO CASE OR CONTROVERSY BEFORE THE COURT BECAUSE SEVP DID NOT TERMINATE MS. ORUGANTI'S F-1 NONIMMIGRANT STATUS

Ms. Oruganti conflates the agency's action here—the termination of her SEVIS record—with the termination of her F-1 status. *See* Pl.'s Mot., ECF No. 2, at 1 ("(1) enjoin Defendants' decision to terminate [Plaintiff's] record in the SEVIS *and her F-1 student status*…"). Emphasis added.

Ms. Oruganti includes no allegations that ICE has terminated her status, which requires (1) "the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act;" (2) "the introduction of a private bill to confer permanent resident status on such alien;" or, (3) "notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d); *see generally* Pl.'s Compl. ECF No. 1. Moreover, Ms. Oruganti includes no allegations that ICE has instituted any action to revoke her F-1 status or remove her from the United States[4], despite making prayer to this Court to "[e]njoin Defendants from detaining

---

[4] The allegation that Ms. Oruganti has "violated her F-1 status" derives from The Ohio State University, incorrectly attributed to "the U.S. government." *See* Pl.'s Compl., ECF No. 1, ¶33 ("[o]n April 8, 2025, Plaintiff received notice from the Ohio State University Office of International Affairs (OIA) that her SEVIS status had been terminated, and that the reason given for the termination was 'Other - Individual identified in criminal records check and/or has their VISA revoked.' The email from OIA further stated: 'Since your SEVIS record has been terminated by SEVP, this indicates the U.S. government believes you have violated your F-1 status.'").

Plaintiff during the pendency of the instant case." *Id.* at "Prayer for Relief." In fact, she acknowledges that revocation and removal could only occur after ICE instituted removal proceedings and Ms. Oruganti has an opportunity to appear before an immigration judge. 8 U.S.C. § 1229a. *Id.* at ¶21; *See also* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited Apr. 24, 2025); 8 C.F.R. § 239.3.

Defendants assert that "[t]erminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it had terminated [Plaintiff's] nonimmigrant status." Watson Decl., ¶¶ 11, 12 (noting, "Terminating a record within SEVIS does not effectuate a visa revocation."). F-1 status and the non-termination of a SEVIS record are *meaningfully* distinct. *See generally Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, No. 7:18CV00189, 2018 WL 5018487, at *5 (W.D. Va. Oct. 16, 2018) (determining that SEVIS status and F-1 status are divisible).

Defendants likewise assure this Court that Plaintiff "is not detained by ICE and is not in administrative removal proceedings." *Id.*, ¶ 10.

Thus, the entire premise of Ms. Oruganti's complaint is incorrect, and there is no case or controversy before the Court regarding her F-1 nonimmigrant status.

## II. THE GOVERNMENT HAS NOT WAIVED SOVEREIGN IMMUNITY UNDER THE APA FOR MS. ORUGANTI'S CHALLENGE TO THE CONTENTS OF HER SEVIS RECORD.

The Court cannot hear Ms. Oruganti's challenge to the contents of her SEVIS record under the APA because the APA's waiver of sovereign immunity does not extend to such a claim. Rather, Congress established the Privacy Act of 1974 to address claims related to information held in

government databases.

The APA's waiver of sovereign immunity is contained in 5 U.S.C. § 702. *Cambranis v. Blinken*, 994 F.3d 457, 462-63 (5th Cir. 2021). Waivers of sovereign immunity must be "unequivocally expressed in statutory text… and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted). The scope of this type of waiver is "strictly construed" in the Government's favor. *Id.* "[T]he 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States* v. *Sherwood*, 312 U.S. 584, 586 (1941)). To invoke the waiver, "the plaintiff must identify some agency action affecting him in a specific way, which is the basis of his entitlement for judicial review" and "the plaintiff must show that he has suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute." *Id.* (quotations/citations omitted). However, § 702 also "contains enumerated exceptions that limit the reach of its general waiver" including that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *See id.* at 463, quoting 5 U.S.C. § 702. "According to the Supreme Court, '[t]hat provision prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes.'" *Cambranis*, 994 F.3d at 463 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (hereinafter "*Patchak*")).

At least one Court has interpreted § 702 and the Supreme Court's decision in *Patchak* to contain three requirements to trigger the "any other statute" exception of § 702: "(1) the statute must address the same type of grievance the plaintiff asserts in his suit; (2) the statute must deal 'in particularity' with the claim, and (3) Congress must have intended the statute to afford the 'exclusive remedy' for that type of claim/grievance." *Cambranis*, 994 F.3d at 463 (citing *Patchak*, 567 U.S. at 216). Ms. Oruganti's complaint refers to termination of her "SEVIS record or status," and prays this Court

"[o]rder that Defendants restore Plaintiff's SEVIS record and status." *See, e.g.,* Pl.'s Compl., ¶42; *id.* at Prayer for Relief ¶ (4). To the extent Ms. Oruganti seeks to bring an APA claim for judicial review to amend the status field contained in her SEVIS record (i.e., from "terminated" to "active"), Ms. Oruganti's claims fail because the Privacy Act forecloses relief.

*The Privacy Act addresses the same type of grievance.* The Complaint alleges that Ms. Oruganti received notice from the Ohio State University Office of International Affairs that her "SEVIS status had been terminated," and "[s]ince your SEVIS record has been terminated by SEVP, this indicates the U.S. government believes you have violated your F-1 status." Pl.'s Compl., ECF No. 1, ¶33; Decl. Prasanna Oruganti, ECF No. 2-1, ¶14. Ms. Oruganti acknowledges that SEVIS is a "database." Pl.'s Compl., ECF No. 1, ¶14 ("The SEVIS is a centralized database maintained by the SEVP…"). She claims that she is "challeng[ing] ICE's illegal termination of her SEVIS record" and that "[t]he termination of a SEVIS record effectively ends F-1 student status," and that termination was the result of a misapplication of agency regulations. *See id.* ¶¶ 3, 7, 42, 43, 47, 50. Ms. Oruganti seeks to have this Court "[v]acate and set aside DHS's termination of Plaintiff's SEVIS status," and thus alter the SEVIS content from "terminated" to "active." *See id.* Prayer for Relief, ¶¶(3)-(4). Congress enacted the Privacy Act to address squarely this type of grievance. *See* 5 U.S.C. § 552a(b).

The Privacy Act addresses records held in government databases. 5 U.S.C. § 552a(b). It permits an individual to review agency records, request the agency correct them, appeal to the agency head if the amendment is denied, and submit a statement of disagreement with the records. *Id.* § 552a(d)(1) (access); § 552a(d)(2) (amendment); § 552a(d)(3) (appeal to agency head); § 552a(d)(4) (statement of disagreement). Once an individual has exhausted his administrative remedies to amend his records, the Privacy Act contains a consent to suit in federal district court. § 552a(d)(3) (exhaustion of administrative remedies); 552a(g)(1)(A) (civil remedies). Thus, the first factor of the *Cambranis* test is met.

*The Privacy Act deals "in particularity" with the asserted claims.* The Privacy Act sets forth the

contours of the administrative process an agency must follow when an individual requests a record amendment, including submitting a request, the timeline for an agency response, a requirement that a denial includes the basis for the decision, and an appeal if the request is denied. 5 U.S.C. § 552a(d)(2). The Privacy Act also states that agencies must establish particular procedures for the review and amendment process. *Id.* at § 552a(f); *Quinn v. Stone*, 978 F.2d 126, 137 (3d Cir. 1992) (describing the "detailed set of requirements" for amending a record set forth in the Privacy Act). It provides for judicial review of an agency's failure to amend the records, but only after administrative remedies have been exhausted. 5 U.S.C. §§ 552a(d)(1)-(4). It also defines the class of persons who may sue, the venue where suit may be brought, the standard of review, the statute of limitations, and the available remedies including an order directing the agency to amend a record or to provide access to a record, costs, attorneys fees, and in some cases actual damages. *See* 5 U.S.C. §§ 552a(g)(1)-(5); *see also Block v. North Dakota*, 461 U.S. 273, 286 n.22 (1983) (indicating that "the balance, completeness, and structural integrity" of a statutory provision "belie[s] the contention that it was designed merely to supplement other judicial relief."). Thus, the second factor of the *Cambranis* test is met.

**Congress intended for the Privacy Act to provide the exclusive remedy in these types of challenges.** The completeness of the Privacy Act scheme to view, challenge, and seek amendment of records, and to pursue civil remedies in court if unsuccessful—shows that Congress intended the Privacy Act to provide the exclusive remedy for claims such as those advanced by Ms. Oruganti. That conclusion is consistent with the legislative history in which Congress explained that the Privacy Act contained provisions "for the exercise of civil remedies by individuals against the Federal Government through the Federal courts to enforce their rights, with the burden of proof resting on the government." H.R. Report 93-1416 (Oct. 2, 1974) at 4 (*see* Privacy Sourcebook[5] at 297). The

---

[5] S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., Legislative History of the

House Report further explained that "[t]he section authorizing civil actions by individuals is designed to assure that any individual who has been refused lawful access to his record or information about him in a record or has otherwise been injured by an agency action which was based upon an improperly constituted record, will have a remedy in the Federal District courts." *Id.* at 17 (*see* Privacy Sourcebook at 310). When reconciling the House and Senate versions of the bill, the committee explained the remedies available under the Privacy Act to correct or amend a record, including the applicable standard of proof: "These amendments represent a compromise between the two positions, permitting an individual to seek injunctive relief to correct or amend a record maintained by an agency. In a suit for damages, … the standard for recovery of damages was reduced to 'willful or intentional' action by an agency." *See* Privacy Sourcebook at 862 (citing from the Congressional Record—Senate, Dec 17, 1974— Senate Considers House Substitute of Text of H.R. 16373 to S. 3418 and Adopts Compromise Amendments Identical to those Considered in House).

Thus, all three elements of the *Cambranis* test are met by the Privacy Act, and it qualifies as "any other statute" under § 702.

***The Privacy Act expressly precludes the relief Ms. Oruganti seeks.*** The sovereign immunity limitation of § 702 requires not just that another statute addresses the particular claims asserted, but also that it "forbids the relief sought." 5 U.S.C. § 702. That is true here. Ms. Oruganti is a national of India. Pl.'s Compl., ECF No. 1, PAGEID #: 4, 9-10, ¶¶ 10, 25. As such, she does not qualify as an "individual" under the Privacy Act. Congress intentionally restricted *who* may challenge purportedly erroneous records under the Act to U.S. citizens and Lawful Permanent Residents. 5 U.S.C. § 552a(a)(2) (defining "individual"); *see* H.R. 93-1416 at 11 (Privacy Sourcebook at 304) (explaining the law "would not affect any other foreign nationals."). Indeed, Congress explicitly acknowledged

---

Privacy Act of 1974 S. 3418 (Public Law 93-579): Source Book on Privacy at 4 (Comm. Print 1976) (hereinafter "Privacy Sourcebook") *available at* https://www.justice.gov/opcl/paoverview_sourcebook/download.

that foreign nationals are barred from the Privacy Act's remedial measures by passing the Judicial Redress Act of 2015, which extended certain remedial measures of the Privacy Act to citizens of designated countries. 5 U.S.C. § 552a note. The Attorney General twice designated European countries whose citizens could take advantage of such redress. 82 Fed. Reg 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019). Congress and the Attorney General have not extended that designation to India, thus barring Ms. Oruganti from the relief she seeks. *Raven v. Panama Canal Co.*, 583 F.2d 169, 170 (5th Cir. 1978) (applying plain meaning to definition of individual in § 552a(a)(2) and holding that "since the plaintiff is a Panamanian citizen and thus not an 'individual' within the meaning of the Privacy Act, she is not entitled to compel access under its authority."); *see also El Badrawi v. Dep't of Homeland Sec.*, 579 F.Supp.2d 249, 279 n. 35 (D. Conn. 2008) ("the Privacy Act implicitly (if not explicitly) forbids nonresident aliens … from suing federal agencies to correct their records.").

Thus, the Privacy Act triggers the exception of § 702 of the APA that sovereign immunity is not waived if "any other statute explicitly or impliedly forbids the relief sought." 5 U.S.C. § 702; *Patchak*, 567 U.S. at 216; *Cambranis,* 994 F.3d at 462-63. "[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Patchak*, 567 U.S. at 216 (alteration in original, quotations/citations omitted); *see also Block*, 461 U.S. at 286 n.22. As the Supreme Court noted, "[i]t would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Block*, 461 U.S. at 285. Other courts have reached the same conclusion in APA suits challenging government records. *See El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 279 n.35 (D. Conn. 2008) (APA's waiver of sovereign immunity did not extend to actions to correct government records); *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014) ("a plaintiff cannot bring an APA claim to obtain

relief for an alleged Privacy Act violation"); *Touchstone Rsch. Grp. LLC v. United States,* No. 18-CV-3451 (OTW), 2019 WL 4889281, at *5-6 (S.D.N.Y. Oct. 3, 2019) (dismissing APA claims because APA's general grant of review was not intended to duplicate existing procedures of Privacy Act). Because the APA's waiver of sovereign immunity does not extend to Ms. Oruganti's claims, the Court lacks jurisdiction over the First and Third causes of action of the Complaint. Pl.'s Compl., ECF No. 1, ¶¶40-43, 48-51.

Additionally, even if Ms. Oruganti qualified as an "individual" under the Privacy Act, her claim here would still be foreclosed because she has not exhausted the mandatory administrative remedies as required by statute before requesting an amendment to records under §§ 552a(2)-(3). *See* 5 U.S.C. § 552a(d)(3); *Taylor v. U.S. Treas. Dep't*, 127 F.3d 470, 475 (5th Cir. 1997) (per curiam) (statutory mandate to exhaust administrative remedies is jurisdictional); *Hill v. Air Force,* 795 F.2d 1067, 1069 (D.C. Cir. 1986) (plaintiff seeking to amend inaccurate records must first exhaust); *Barouch v. United States DOJ*, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (exhaustion requirement of Privacy Act is jurisdictional).

## III. SEVP'S CHANGE TO MS. ORUGANTI'S SEVIS RECORD IS NOT A FINAL AGENCY ACTION

Even if the Privacy Act does not preclude APA review of Ms. Oruganti's claims, she still fails to assert a viable claim under the APA because SEVP's change to her SEVIS record is not a final agency action.

A final agency action is required for APA review. 5 U.S.C. § 706. An action is "final" when it (1) "mark[s] the consummation of the agency's decision-making process," and (2) is one "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). "Final agency action 'is a term of art that does not include all [agency] conduct such as, for example, constructing a building, operating a program, or performing a contract,' but instead refers to an 'agency's [final] *determination* of rights and obligations whether by rule, order, license, sanction,

26

relief, or similar action.'" *Nat'l Veterans Legal Servs. Program v. United States DOD*, 990 F.3d 834, 839 (4th Cir. 2021) quoting *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citing *Bennett*, 520 U.S. at 177-78). A challenged action fails the first prong if it is "of a merely tentative or interlocutory nature" and does not express an agency's "unequivocal position." *Holistic Candlers and Consumer's Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (citations omitted). A non-final action contemplates further administrative consideration or modification prior to the agency's adjudication of rights or imposition of obligations. *See id.* at 945.

An agency action is not final if it "only affects [the complainants'] rights adversely on the contingency of future administrative action." *Marquette Cnty. Rd. Comm'n v. U.S. Env't Prot. Agency*, 188 F. Supp. 3d 641, 647 (W.D. Mich. 2016), *aff'd*, 726 F. App'x 461 (6th Cir. 2018) (quotation omitted).

SEVP's change to Ms. Oruganti's SEVIS record fails to meet both factors of the final agency action test. First, the change does not mark the consummation of any decision-making process. SEVIS records are "an electronic means to monitor and verify" certain information about a student nonimmigrant. *See* Watson Decl. ¶4; 8 U.S.C. § 1372(c). Congress expressly instructed that ICE "*shall* use such information to carry out the enforcement functions of the agency." 6 U.S.C. § 252(a)(4) (emphasis added). But, as described by statute and regulation, enforcement via immigration proceedings provides notice, opportunity to be heard, and a final, appealable decision. *See* 8 U.S.C. §§ 1229a, 1252(a)(5), (b)(9); *see also* 8 C.F.R. § 1239.1. The conclusion of such enforcement proceedings is a final agency action; SEVP's changes to a record within a DHS database is not. Indeed, changing a SEVIS record to "terminated" does not terminate an alien's nonimmigrant status in the United States. Watson Decl. ¶11. Thus, the SEVIS record—indicating initial, active, inactive, completed or terminated—does not reflect the consummation of any agency

decision-making process regarding the student's nonimmigrant status.

Second, legal consequences do not flow from the mere changing of a SEVIS record to terminated. As indicated, it does not terminate the student's nonimmigrant status or result in the revocation of a nonimmigrant visa. Watson Decl. ¶11. Rather, it is record keeping action conducted under DHS's authority to carry out the enforcement functions of the agency. 6 U.S.C. § 252(a)(4). *See Zhao*, 2018 WL 5018487, at *6 (describing SEVIS record modification by school's DSO as "clerical duty performed as a preliminary matter"); *see also Yerrapareddypeddireddy v. Albence*, No. CV-20-01476-PHX-DWL, 2021 U.S. Dist. LEXIS 221212, at *22 (D. Ariz. Nov. 16, 2021) (similar as to ICE's termination of a SEVIS record).

Ms. Oruganti alleges that DHS lacks the authority to change a SEVIS record under 8 C.F.R. § 214.1(d). *See* Pl.'s Compl. at ¶¶4, 7, 18. She is incorrect. Part 214.1(d) relates to the termination of an alien's nonimmigrant status—not her SEVIS record. *See* 8 C.F.R. § 214.1(d) ("the nonimmigrant status of an alien shall be terminated by…"). And as SEVP has indicated, it "has never claimed that it had terminated [Ms.] Oruganti's nonimmigrant status." Watson Decl. ¶11. Moreover, § 214.1(d) provides three mandatory scenarios in which nonimmigrant status "shall" be terminated without review. *See* 8 C.F.R. § 214.1(d). It does not, however, suggest that nonimmigrant status cannot be terminated for other reasons. *See id.* The plain text of the regulation controls. *Textron Inc. v. Comm'r of Internal Revenue*, 336 F.3d 26, 31 (1st Cir. 2003). Part 214.1(d) provides reasons for terminating nonimmigrant status in addition to reasons provided elsewhere in the applicable statutory provisions and regulations. *See, e.g.*, 8 U.S.C. § 1201(i); 8 C.F.R. § 214.2(f). But here, Congress tasked ICE with "administering the program to collect information relating to nonimmigrant foreign students … described in section 1372 of title 8, including the Student and Exchange Visitor Information System established under that section," and directed that the agency "shall use such information to carry out the enforcement functions of the agency." 6 U.S.C. § 252(a)(4) . DHS can update, change or modify

the records for that program because of this congressionally mandated authority. *Id.*

Ms. Oruganti also alleges that SEVP's change to her SEVIS record is affecting her ability to work at the college, but she fails to provide any evidence that legal consequences flow from the change in her SEVIS record. Instead, Ms. Oruganti asserts her own fears and decisions by the college, neither of which are sufficient to establish that the SEVIS record change constitutes a final agency action. *See* Pl.'s Compl. at ¶¶36, 37; *see, e.g., Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 15-16 (D.C. Cir. 2005) (rejecting assertion that voluntary compliance with agency guidance is a legal consequence).

Thus, Ms. Oruganti fails to assert a viable claim under the APA because SEVP's change to her SEVIS record is not a final agency action.

## IV. MS. ORUGANTI CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS OF HER DUE PROCESS CLAIM IN HER SECOND CAUSE OF ACTION

Ms. Oruganti asserts that she "has a constitutionally protected property interest in her SEVIS registration…[and] [t]he failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment." Pl.'s Compl. at ¶¶44-47. But as indicated, SEVP changed Ms. Oruganti's SEVIS record to "terminated" and did not terminate her nonimmigrant status. Watson Decl. ¶ 11. Thus, to the extent that Ms. Oruganti is asserting that SEVP's change to her SEVIS record violates due process, she has no likelihood of success on the merits of that claim. This is because courts have held that there is no property interest in a SEVIS record.

In order to establish a procedural due process claim under the Fifth Amendment, "a plaintiff must (1) 'identify a protected liberty or property interest,' and (2) 'allege that the defendants ... deprived [him] of that interest without constitutionally adequate process.'" *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 34 (1st Cir. 2011) (quoting *González–Droz v. González–Colón*, 660 F.3d 1, 13 (1st Cir. 2011)). Ms. Oruganti has not, and cannot, provide any authority to establish a constitutionally protected

interest in a SEVIS record. This is because the opposite is true—courts have held that no such interest exists. *See, e.g., Zhao*, 2018 WL 5018487, at *6 (holding that plaintiff did not have a property interest in his SEVIS record that would implicate due process).[6]

In *Bakhtiari v. Beyer*, Civ. A. No. 06-1489, 2008 WL 3200820, at *2-3 (E.D. Mo. Aug. 6, 2008), the court analyzed 8 C.F.R. §§ 214.3 and 214.4 and rejected the plaintiff's claim that the regulations created a property interest that could form the basis for a constitutional claim. *See Bakhtieri*, at *2. In doing so, the court concluded that the regulations did not indicate a congressional intent to benefit a class of nonimmigrants or create a private right of action that could give rise to a federal right. *Id.* at *3. *Bakhtiari* applies here to the claims by Ms. Oruganti.

Based on this, any claim by Ms. Oruganti that she has a constitutionally protected property interest in a SEVIS record fails. Accordingly, Ms. Oruganti fails to demonstrate a likelihood of success on the merits of her due process claim in the Second of Action of the complaint.

## V. MS. ORUGANTI CANNOT ESTABLISH IRREPARABLE HARM.

Irreparable harm must be likely absent an injunction, not merely possible. *Winter*, 555 U.S. at 22. Here, Ms. Oruganti has failed to establish any irreparable harm. The Court can and should deny her preliminary injunction motion on this basis alone given that the Sixth Circuit has held, "the *existence* of an irreparable injury is mandatory." *Ohio v. Becerra*, No. 21-4235, 2022 WL 413680, at *2 (6th Cir. Feb. 8, 2022) (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019)).

Ms. Oruganti asserts that she is "at risk of being detained and removed from the United States at

---

[6] *See also S.M. v. Del. Dep't of Educ.*, 77 F. Supp. 3d 414, 419 (D. Del. 2015) (holding that there is no protected property interest for students wishing to continue attending their same school); *Fan v. Brewer*, No. H–08–3524, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009) (updating student's SEVIS record to reflect changed academic status did not violate any constitutional right); *Doe 1 v. U.S. Dep't of Homeland Sec.*, No. 220CV09654VAPAGRX, 2020 WL 6826200, at *4 n.3 (C.D. Cal. Nov. 20, 2020), *aff'd sub nom. Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849 (9th Cir. 2021) ("Although Plaintiffs do not allege in the Complaint or Motion a property interest in their SEVIS status, it is equally unlikely that one exists.").

any time." Pl.'s Compl. at ¶37. But any claims related to the possibility of removal proceedings do not constitute irreparable injury. *See Nken*, 556 U.S. at 435 ("[T]he burden of removal alone cannot constitute the requisite irreparable injury."). Moreover, Ms. Oruganti is free to depart the United States on her own. *See Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024)*.* Thus a fear of deportation is not an irreparable injury, particularly so here, where Ms. Oruganti has not demonstrated that the commencement of removal proceedings against her are imminent.

Again, Ms. Oruganti's F-1 nonimmigrant status has not been terminated, *see* Watson Decl. ¶ 11. Although she "does not challenge the revocation of her visa in this action," it is incorrect as both a legal and practical matter that there exists a cause and effect between the Privacy Act related function of changing her "active" status to "terminated" in her SEVIS record, and her F-1 nonimmigrant status.  Pl.'s Compl., ECF No. 1, PAGEID #: 4, ¶7.  This is so because F-1 students admitted for the duration of status (or "D/S") begin to accrue unlawful presence only after USCIS or an Immigration Judge has taken administrative action against them. *See* USCIS Memorandum on May 6, 2009, "Consolidation of Guidance Concerning Unlawful Presence for Purposes of Section 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(1) of the Act," found online at: https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF (last visited Apr. 24, 2025); *see also* 8 C.F.R. § 239.3.

Moreover, Ms. Oruganti's claim that she is being "coerce[d]..into abandoning [her] studies and 'self-deporting,'" (Pl.'s Compl., ECF No. 1, PAGEID #: 2-3, ¶4), is at best an exaggeration as she has failed to demonstrate that she is unable to transfer her completed credits and other accomplishments from The Ohio State University to another college or university either in her home country or in another country (*e.g.*, Canada) and complete her Ph.D. program.

Plaintiff has failed to demonstrate irreparable harm sufficient to warrant extraordinary injunctive relief. Additionally, Plaintiff's reputational harm is speculative because a movant cannot show

"certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id*. at 414. As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015); *see also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (while injunctive relief may be ordered to prevent reputational harm, a finding of reputational harm may not be based on "pronouncements [that] are grounded in platitudes rather than evidence"); *Pom Wonderful LLC v. Pur Beverages LLC*, Civ. A. No. 13-6917, 2015 WL 10433693, at *11 (C.D. Cal. Aug. 6, 2015) (unsubstantiated statements were "not *evidence* that [plaintiff's] reputation and goodwill are likely to be harmed absent injunctive relief" (emphasis in original)).

And Ms. Oruganti's assertion that her school's decision to end her stipend puts her in "extreme financial hardship," (Pl.'s Compl., ECF No. 1, at ¶6), cannot constitute an irreparable injury because she fails to indicate why the loss of the stipend "is so great as to threaten the existence of [the equivalent] of [her] business," *see Vaqueria Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464, 485 (1st Cir. 2009), when a foundational requirement for eligibility for F-1 student status is demonstration of the ability to independently cover all costs while present in the United States. *See* 8 C.F.R. § 214.2(f)(1)(i)(B).

Finally, Plaintiff's claim related to her loss of employment, (as a graduate research assistant, and thus her university stipend), and her reputation, ("I will be unable to continue my studies. I would lose years of academic progress."), and thus future employment, do not constitute irreparable harm. Decl. Prasanna Oruganti, ECF No. 2-1, ¶¶20-23. Lost wages are generally not harms that are irreparable and The Ohio State University—that is, the entity who presumably terminated Ms.

Oruganti's employment—is not party to this lawsuit. *See Aluminum Workers Int'l Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir. 1982) (absent a showing that an employer will be unable to provide backpay or reinstatement, "loss of employment . . . is not irreparable harm and will not support a claim . . . for injunctive relief"). Furthermore, "[m]onetary injuries alone, even if they are substantial, ordinarily do not constitute irreparable harm." *Spadone v. McHugh*, 842 F. Supp. 2d 295, 301 (D.D.C. 2012) (citations omitted).

Accordingly, Ms. Oruganti has failed to establish any irreparable harm.

## VI. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR THE GOVERNMENT

The balance of equities and public interest factors "merge when the Government is the opposing party." *See Nken*, 556 U.S. at 435. A court "'should pay particular regard for the public consequences'" of injunctive relief. *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Here, this factor weighs heavily in the Government's favor. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 750 (9th Cir. 1992). And the public interest in enforcement of United States immigration laws is significant. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976).

Enjoining the agency's ability to exercise its authority before a complete review of the merits of the case, especially considering the novel and complex issues of law present here, is also serious and may be harmful. *See Lopez-Mejia v. Lynch*, No. 1:16-CV-549, 2017 WL 25501, at *4 (S.D. Ohio Jan. 3, 2017) (acknowledging that "the government has a compelling state interest, based on border security and national sovereignty, to enforce its immigration" rules). And the executive retains a strong interest in handling immigration matters. *See Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (recognizing that the public interest in immigration enforcement is significant) (collecting cases).

Congress has instilled in the Secretary of Homeland Security significant authority to administer

and enforce U.S. immigration laws, including those governing the conditions of admission of foreign students. *See* 8 U.S.C. §§ 1103(a), 1184(a)(1). And directly applicable here, Congress has mandated that ICE " administer[]the program to collect information relating to nonimmigrant foreign students and other exchange program participants described in section 1372 of title 8, including the Student and Exchange Visitor Information System established under that section, and … use such information to carry out the enforcement functions of the agency." *See* 6 U.S.C. § 252(a)(4). Any order that enjoins a governmental entity from enforcing actions taken pursuant to statutes enacted by the duly elected representatives of the people constitutes an irreparable injury that weighs heavily against the entry of injunctive relief. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977). Granting Ms. Oruganti with the extraordinary relief that she seeks will effectively undermine DHS's authority to enforce the provisions of the Immigration and Nationality Act relating to the Department's ability to administer the SEVP described in 8 U.S.C. § 1372 and, as such, to change SEVIS record status to "terminated" as needed, in order to carry out the enforcement functions of the agency. The public interest would not be served by the Court commandeering the authority of the agency.

## CONCLUSION

For these reasons, the Court should deny Ms. Oruganti's request for a preliminary injunction in its entirety.

<div style="margin-left: 40%;">

Respectfully submitted,

KELLY A. NORRIS
ACTING UNITED STATES ATTORNEY

s/Christopher R. Yates
CHRISTOPHER R. YATES (0064776)
Assistant United States Attorney
Attorney for Defendants
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Christopher.Yates@usdoj.gov

</div>

## **CERTIFICATE OF SERVICE**

I certify that on the 25th of April 2025, I electronically filed the foregoing using the CM/ECF system, which sends notification of such filings to counsel for Plaintiff.

s/Christopher R. Yates
Christopher R. Yates (0064776)
Assistant United States Attorney