UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PRASANNA ORUGANTI, <br><br> Plaintiff, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement, <br><br> Defendants. | Case No. 2:25-cv-00409 <br><br> Judge Marbley <br><br> Magistrate Judge Deavers |

## MOTION FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff Prasanna Oruganti is a noncitizen student pursuing a doctorate in agricultural engineering at The Ohio State University. On April 8, 2025, Ms. Oruganti was notified by her school—not anyone in the federal government—that Defendants had terminated her status in the Student and Exchange Visitor Information System ("SEVIS"), leaving her without lawful status to remain in the United States and without permission to continue her research, for which she received a modest stipend to support herself financially during her studies. Ex. B, OSU OIA Email. Neither Ms. Oruganti nor her school were given advance notice or a meaningful explanation for the termination. Ex. C, Email from OSU President Carter (explaining OSU had

1

no notice or explanation of status terminations). Ms. Oruganti is not alone in experiencing this sudden and unexplained termination of student status. Over the past few weeks, over 1500 international students across the United States, including at least 12 at Ohio State, have also been notified by their institutions that their F-1 status has been terminated for unclear reasons.[1]

Ms. Oruganti filed a Complaint for Declaratory and Injunctive Relief, ECF No. 1, because Defendants' actions suddenly left her at risk of imminent detention and removal from the United States, took away her only means of income to support herself, and threatened her ability to pursue her studies—all of which will irreparably harm her absent a preliminary injunction.

Ms. Oruganti is likely to succeed on the merits of her claim under the Administrative Procedure Act that the termination of her status was arbitrary and capricious, and contrary to law. 5 U.S.C. § 706(2)(A), (C)-(D). Defendants can unilaterally terminate F-1 student status under the SEVIS system _only_ when (1) a previously-granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) the Department of Homeland Security ("DHS") publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R.] § 214.1(d); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019). None of these situations occurred in Ms. Oruganti's case.

Ms. Oruganti is also likely to succeed on the merits of her due process claim because she was denied "[n]otice and a meaningful chance to be heard," which are "essential to [a

---

[1] Ashley Mowreader, "What we've learned so far from tracking student visa data: More than 1,500 students from nearly 250 colleges have had their visas revoked, but who they are—and why they've been targeted—is still largely unknown," *Insider Higher Ed* (Apr. 21, 2025) (attached as Exhibit S); Sheridan Hendrix, "Ohio State says not all international students remain in US as revoked visas climb to 12," *The Columbus Dispatch* (Apr. 15, 2025), https://www.dispatch.com/story /news/education/2025/04/15/ohio-state-reports-12-revoked-student-visas-not-all-currently-in-u-s/83103125007/ (attached as Exhibit T).

2

noncitizen's] due process rights." *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976).

To be clear, Plaintiff does *not* challenge the revocation of any visa in this case. To Plaintiff's knowledge, her visa has not been revoked, and even if it had been, a visa revocation does not control whether a student has F-1 status. Instead, Plaintiff brings this lawsuit to challenge Defendants' unlawful termination of her F-1 student *status* in the SEVIS system.

Because of the imminent and real harms Ms. Oruganti has already faced and will face in the immediate future, she requests that the Court grant a preliminary injunction to (1) enjoin Defendants' decision to terminate Ms. Oruganti's record in the Student and Exchange Visitor Information System ("SEVIS") and her F-1 student status, retroactive to April 8, 2025; and (2) enjoin Defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as a result of that decision pending the instant case.

## BACKGROUND

Congress has authorized international students who enroll in approved academic institutions to obtain nonimmigrant F-1 visas. 8 U.S.C. § 1101(a)(15)(F)(i). Once admitted to the United States on the F-1 visa, the student is granted F-1 student *status* and permitted to remain in the United States for the duration of status ("D/S") as long as the student continues to meet the requirements established by the governing regulations at 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. "Duration of status" is defined, in general, as "the time during which an F-1 student is pursuing a full course of study at an educational institution certified [] for attendance by foreign students, or engaging in authorized practical training following completion of studies[.]" 8 C.F.R. § 214.2(f)(5)(i). *See* Ex D, Form I-94 (showing Ms. Oruganti was admitted on an F-1 visa for D/S).

The Student and Exchange Visitor Information System (SEVIS) is a centralized database that tracks international students' compliance with their F-1 status. Immigration and Customs

3

Enforcement (ICE), through the Student and Exchange Visitor Program (SEVP), uses SEVIS to monitor student status. *See generally* 8 U.S.C. § 1372. Only schools and ICE have access to SEVIS records. Under 8 C.F.R. § 214.3(g)(2), Designated School Officials (DSOs) must report through SEVIS to SEVP when a student fails to maintain status. Students fail to maintain status when they do not comply with the regulatory requirements of F-1 status, such as failing to maintain a full course of study without prior approval, engaging in unauthorized employment, or other violations of the requirements set forth at 8 C.F.R. § 214.2(f). F-1 students are also subject to the requirements for "maintenance of status" set forth in 8 C.F.R. § 214.1 that apply to several nonimmigrant classes, including F-1 students. One of these requirements is that a student not be convicted a "a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g).

Finally, the regulations provide that ICE shall terminate the status of a student in certain limited situations. The nonimmigrant status of a student "shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d).

Prasanna Oruganti is a 29-year-old doctoral student at The Ohio State University who has been pursuing the study of agricultural engineering since January 2024. Ex. A, Oruganti Decl. at ¶¶ 2, 11. Ms. Oruganti is a citizen and national of India and was first admitted to the United States in 2018 as an F-1 student to pursue a master's program at Northwest Missouri State University. *Id.* at ¶¶ 4-5; Ex. D, Form I-94; Ex. E, I-94 Travel History. She graduated with her master's in agriculture in May 2020, and worked for three months in optional practical training at

4

Kansas State University. Ex. A, Oruganti Decl. at ¶ 6. Ms. Oruganti then started a Ph.D. program at Kansas State University in August 2020, but moved back to India in February 2021 after accepting a job offer there. *Id.* at ¶ 7. In February 2022, she returned to the United States as an F-1 student to enter an MBA program, but she ultimately left the MBA program to return to pursuing her greatest interest, agriculture. *Id.* at ¶¶ 8-10. She began a Ph.D. program in agricultural engineering at The Ohio State University in January 2024. *Id.* at ¶ 11; Ex. F, Form I-20; Ex. G, Offer Letter. She hopes to use her degree and her expertise to help farmers implement soil management reforms and improve soil health. Ex A, Oruganti Decl., at ¶ 12. Throughout her time in the U.S., Ms. Oruganti has continuously maintained her student status and not violated any of its terms. *Id.* at ¶ 13.

Ms. Oruganti had finished three semesters of her Ph.D. program, and was nearing the completion of her fourth, when she received an email from The Ohio State University's Office of International Affairs on April 8, 2025, informing her that her SEVIS record had been "terminated" by SEVP for the following reason: "Other - Individual identified in criminal records check and/or has had their VISA revoked." Ex. B, OIA Email. Ms. Oruganti's visa has not been revoked, to her knowledge. Ex. A, Oruganti Decl. at ¶ 17. And her contact with the criminal justice system is exclusively limited to a June 2020 traffic conviction for "Defective Equipment" in Maryville, Missouri, to which she pleaded guilty and paid a $300 fine after hitting some decorative bricks in a knee-high landscaping retaining wall in front of a store. Mo. Ann. Stat. § 307.170; Ex. H, Charge/Judgment, *Maryville v. Oruganti*, Case No. 180181745; Ex. I, Ticket/Docket Sheet; Ex. J, Maryville Police Report at 6; Ex. A, Oruganti Decl. at ¶¶ 17-19. Ms. Oruganti was initially charged with leaving the scene of an accident, in violation of Mo. Ann. Stat. § 577.060, because when she hit the decorative bricks, the store was closed (as verified by

the store owner in the police report, who returned to the store after being gone for several days), and she drove home and called the store to report the accident the next day. Ex A, Oruganti Decl. ¶ 18; Ex. J, Police Report at 6, 8. As she has no other criminal charges or convictions, has never failed to maintain a full course of study, and has never engaged in unauthorized employment, her record is free of any other potential basis for her SEVIS record and F-1 student status to be terminated. *Id.* at ¶¶ 13, 16-17; *see* 8 C.F.R. §§ 6-214.1(e)-(g).

This termination puts Ms. Oruganti's education, research, and career trajectory at risk. Ex. A, Oruganti Decl. at ¶ 20. Specifically, she is no longer authorized to continue her on-campus employment in the Department of Food, Agriculture and Biomedical Engineering, which will severely affect her ability to complete her studies and obtain a Ph.D. Ex. B, OIA Email; Ex. A, Oruganti Decl, at ¶¶ 20-22. Her research associateship is an important part of her doctoral training. Ex. G, OSU Offer Letter; Ex. A, Oruganti Decl. at ¶¶ 20-22. It also strips her of her only source of income. *Id.* at ¶ 20. This termination may also put Ms. Oruganti at risk of immigration detention and deportation—an outcome students have already faced across the U.S. *See, e.g., Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 U.S. Dist. LEXIS 64831 (D. Mass. Apr. 4, 2025).[2] Moreover, reinstatement of her F-1 student status is critical as it can serve as a form of relief and defense in potential removal proceedings.

If the preliminary injunction is not granted when the TRO expires, Ms. Oruganti will be out of immigration status, which significantly impedes her ability to request a change to a different nonimmigrant status, *see* 8 C.F.R. § 48.1(a) (nonimmigrant must be in status to change status). Being out of status also affects her chance of reinstating her F-1 student status in the

---

[2] *See also* Coral Murphy Marcos, "Indonesian student detained by ICE after US secretly revokes his visa," *The Guardian* (Apr. 19, 2025), available at: https://www.theguardian.com/us-news/2025/apr/19/aditya-wahyu-harsono-immigration-indonesia (attached as Exhibit R).

6

future. *See Jie Fang v. Director United States Immigration & Customs Enforcement*, 935 F.3d 172, 176 (3d Cir. 2019) (noting that a student may not be out of valid F-1 student status for more than 5 months for a reinstatement application). Being out of status also puts her at risk of detention and removal by Defendants. 8 U.S.C. § 1227(a)(1)(C)(i) ("Any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted" is deportable); Ex. K, ICE Student and Exchange Visitor Program Website, at 4 (explaining that "appropriate action," which could include "denial of benefits or removal from the United States," is taken when someone is identified as a student visa status violator in the SEVIS system). If she were to be removed from the U.S., or were to self-deport due to her inability to support herself here in the U.S. without her stipend, she would also be subject to a five-year ban on reentering the U.S. after a status violation. 8 U.S.C. § 1182(a)(6)(G).

On April 16, 2025, Plaintiff filed a Complaint for Declaratory and Injunctive Relief and a Motion for a Temporary Restraining Order. ECF Nos. 1; 2. On April 17, 2025, this Court conducted a Rule 65.1 conference. The Court orally granted Plaintiff's motion at the Rule 65.1 conference and issued a written Opinion and Order supplementing its ruling on April 18, 2025. ECF No. 7.

## STANDARD OF REVIEW

Emergency injunctive relief is warranted when a plaintiff demonstrates: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the equities balance in the plaintiff's favor; and (4) that preliminary injunctive relief would serve the public interest. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008); *Ne. Ohio Coal. For the Homeless v. Husted,* 696 F.3d 580, 590-91 (6th Cir. 2012); *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012).

To obtain preliminary injunctive relief, a complainant need show only a likelihood of success on the merits; she not demonstrate actual success. *See Winter*, 555 U.S. at 32. As explained below, Ms. Oruganti is likely to succeed on the merits of her claims, she faces irreparable harm absent injunctive relief, the equities balance in her favor, and injunctive relief is in the public interest.

## ARGUMENT

### I. Plaintiff is likely to prevail on her claims that the termination of her F-1 Student Status was Unlawful

Defendants' termination of Plaintiff's F-1 student status under the SEVIS system was unlawful for multiple independent reasons: the SEVIS termination violated the APA, as arbitrary, capricious, not in accordance with the law, in excess of statutory authority, and without observance of procedure required by law, 5 U.S.C. § 706(2)(A), (C)-(D), including the regulatory regime at 8 C.F.R. § 214.1(d) (Counts One and Three); and the termination also violated the Due Process Clause of the Fifth Amendment (Count Two).

#### A. Plaintiff is likely to prevail on her claims that the status termination violates the Administrative Procedure Act (Counts One and Three)

Defendants' termination of Ms. Oruganti's SEVIS record violates the APA in the first instance because Defendants lacked the appropriate authority to terminate the status based on the facts of Ms. Oruganti's particular case—namely, she has not committed any of the acts that permit such termination (Count 1). Additionally, because Defendants failed to follow the procedural requirements of 8 C.F.R. § 214.1(d) and failed to provide Ms. Oruganti with any reasoning for the termination of her SEVIS record, the termination is also arbitrary and capricious and violates the APA (Count 3).

As a preliminary matter, Defendants' termination of Plaintiff's F-1 student status is a final agency action which this Court has jurisdiction to review. Final agency action "marks the

consummation of the agency's decisionmaking process" and is "an action from which legal consequences will flow," *Bennett v. Spear*, 520 U.S. 154, 178 (1997). The termination of Ms. Oruganti's SEVIS record and her student status has immediate legal consequences—ending her lawful status, requiring her to cease on-campus employment, rendering her deportable from the U.S., and hindering her ability to qualify for certain future immigration benefits because she is considered out of status. This satisfies the APA's standard for finality because it determines rights and obligations with no further process available. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) (finding termination of F-1 status was a final agency action).

At the Court's Rule 65.1 conference on Plaintiff's Motion for a TRO, Defendants contended that the termination of a SEVIS record does not terminate student status. This is incorrect, as confirmed by the government's own guidance. According to *Study in the States*, an official DHS website, termination of a SEVIS record for an F-1 student triggers immediate legal consequences: "The student loses all on and/or off-campus employment authorization," "cannot re-enter the United States on the terminated SEVIS record," and "any associated F-2 or M-2 dependent records are terminated." Ex. L, DHS's *Study in the States* website printout. The guidance further states that "Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student. *Id.* USCIS guidance also confirms that an active SEVIS record is a mandatory prerequisite for F-1 students seeking employment authorization under Optional Practical Training. The agency states that students seeking either pre-completion or post-completion OPT "must apply after your DSO enters the recommendation for OPT into your SEVIS record." Ex. M, Optional Practical Training (OPT) for F-1 Students

website printout.³ Thus, USCIS clearly considers a student with a terminated SEVIS record to also be out of status. Further, the ICE SEVIS informational website specifically states ICE will initiate enforcement action against individuals found to have violated the terms of their student status, and lists removal from the United States as one possible action it will take against student status holders. Ex. K, ICE SEVIS website at 4. The government's theory that termination of an individual's status in the SEVIS database is not a termination of actual immigration status is akin to claiming someone still holds a valid driver's license after the BMV voids the license in its system. Such a person cannot legally drive, cannot obtain auto insurance, and cannot convince a court that they remain licensed to operate a motor vehicle. Voiding the license has legal consequences and is not merely a database update.

The SEVIS termination—which is a termination of student status—violated the APA because it was not in accordance with law, and Ms. Oruganti is likely to succeed in her challenge. 5 U.S.C. § 706(2)(A), (C)-(D). Defendants' ability to unilaterally "terminate an F-1 [student status] is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, Defendants can terminate student status *only* when: (1) a previously-granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). Since Defendants did not take any of these actions, any action to terminate the SEVIS record is arbitrary and capricious and in violation of the APA.

Additionally, Defendants' "explanation" of the termination, to the extent that it can be

---

³ U.S. Citizenship & Immigr. Servs., "Optional Practical Training (OPT) for F-1 Students," *available at* https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/optional-practical-training-opt-for-f-1-students  (last updated Nov. 25, 2024).

labeled as such, does not state a valid reason for termination in Ms. Oruganti's case. According to the email Ms. Oruganti received from OSU informing her of her terminated status, Defendants identified "Other – Individual identified in criminal records check and/or has had their visa revoked" as the basis for the SEVIS termination, but Ms. Oruganti has no qualifying conviction, nor has her visa been revoked, and these therefore cannot form the basis for the terminations. Final agency action can be set aside as arbitrary and capricious when the explanation for the action fails to make "a rational connection between the facts found and the choice made. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Further, while Plaintiff's visa has not been revoked to her knowledge, even if it had been revoked, the revocation of a visa does not constitute a failure to maintain status and cannot, therefore, serve as a basis for termination of F-1 student status. If a visa is revoked before the student's arrival in the United States, the student may not enter, and the SEVIS record of F-1 student status is terminated. However, ICE's own policies make clear that after a student has been admitted into the United States, "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record" because the student is permitted to continue the authorized course of study. *See* Ex. N, ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010).[4] Rather, if the visa is revoked, the student is *permitted* to continue her course of study in school, but *upon departure* from the U.S., the SEVIS record of F-1 student status is terminated, and the student must obtain a new visa from the consulate or embassy before returning to the United States. *See* Ex. O, Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[5] Therefore, any visa revocation cannot provide grounds for the SEVIS

---

[4] Available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[5] Available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

termination.

Finally, not only was Defendants' stated reason for Ms. Oruganti's SEVIS termination arbitrary and capricious and contrary to law, but there is absolutely no other plausible legal basis for Ms. Oruganti's termination. The regulations provide a list of specific circumstances where certain conduct by a nonimmigrant, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status." 8 C.F.R. §§ 214.1(e)-(g). Schools are required to report these violations to SEVP. 8 C.F.R. § 214.3(g)(2). However, none of these violations occurred in Ms. Oruganti's case. She has not committed any crime of violence, having pleaded guilty to only a minor misdemeanor charge of defective equipment, which involved no violence of any kind against any person. Mo. Ann. Stat. § 307.170. Ex. A, Oruganti Decl. at ¶¶ 16-17; Ex. H, Charge/Judgment; Ex. J, Police Report. She has not engaged in unauthorized employment. Ex. A, Oruganti Decl. at ¶¶ 17. She has never given false information to DHS. In other words, Ms. Oruganti has done nothing to trigger the SEVIS termination, and it lacks any plausible legal basis.

Because Defendants unlawfully terminated Ms. Oruganti's F-1 student status without any statutory or regulatory authority, the termination is arbitrary, capricious, not in accordance with the law, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, and without observance of procedure required by law, 5 U.S.C. § 706(2)(A), (C)-(D), including 8 C.F.R. § 214.1(d). Indeed, over the last two weeks, more than twenty federal district courts throughout the country (including another court in this district) have issued temporary restraining orders to enjoin SEVIS record terminations and held that plaintiffs were likely to

succeed on the merits of their claims that the terminations violated the APA.[6] Ms. Oruganti is likely to succeed on the merits of her APA claims.

### B. Plaintiff is likely to prevail on her claim that the status termination violates the Fifth Amendment's Due Process Clause (Count Two)

Defendants' termination of Plaintiff's F-1 student status is a straightforward violation of the Fifth Amendment's Due Process Clause. As an admitted noncitizen student in the United States, Ms. Oruganti has due process rights. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). The basic principle of a noncitizen's due process right is "the right to notice of the nature of the charges and a meaningful opportunity to be heard." *Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997).

---

[6] *See, e.g.*, *D.B. v. Trump*, No. 2:25-cv-419 (S.D. Ohio Apr. 23, 2025) (Watson, J.) (granting TRO where dismissed gambling-paraphernalia charge did not warrant termination under the regulations); *Isserdasani v. Noem*, No. 25-cv-283, 2025 WL 1118626 (W.D. Wis. Apr. 15, 2025) (granting TRO where SEVIS termination based on non-prosecuted arrest was found likely arbitrary and in violation of APA); *Doe v. Noem*, No. 25-cv-03140-JSW (N.D. Cal. Apr. 17, 2025) (granting TRO enjoining ICE from enforcement action arising from SEVIS termination for misdemeanor conviction not meeting 8 C.F.R. § 214.1(g) criteria); *Arizona Student Doe #2 v. Trump*, No. CV-25-00175 (D. Ariz. Apr. 15, 2025) (granting ex parte TRO enjoining arrest, removal, and enforcement based on SEVIS revocation undertaken without notice or hearing); *Roe v. Noem*, No. CV 25–40, 2025 WL 1114694 (D. Mont. Apr. 15, 2025) (finding likelihood of success on APA and Due Process claims where SEVIS terminations lacked valid regulatory basis); *Liu v. Noem*, No. 25-cv-133 (D.N.H. Apr. 10, 2025) (TRO granted to prevent loss of status and graduation due to unexplained SEVIS termination); *Doe v. DHS*, No. 25-cv-2149 (N.D. Ill. Apr. 15, 2025) (TRO granted where SEVIS termination followed mistaken arrest for trespassing, with no charges filed); *J. Smith v. Noem*, No. 25-cv-1702 at 6–7 (C.D. Cal. Apr. 14, 2025) (TRO issued to enjoin ICE from detaining student whose SEVIS record was terminated following a minor misdemeanor not meeting statutory removal criteria); *Yousefi v. Noem*, No. 25-cv-0625 (S.D. Tex. Apr. 13, 2025) (court granted TRO where SEVIS record was terminated without agency explanation, jeopardizing student's graduation and STEM OPT eligibility); *Jin v. Noem*, No. 25-CV-1391 (D. Minn. April 17, 2025) (court granted TRO enjoining ICE from enforcement action arising from SEVIS termination due to minor traffic violations.); *W.B. v. Noem*, No. 3:25-cv-3407 (N.D. Cal. Apr. 23, 2025); *Beyhaqi v. Noem*, No. 4:25-cv-1788, ECF No. 7 (S.D. Tex. Apr. 22, 2025); *Bejugam v. Lyons*, 2:23-cv-0057, ECF No. 17, (N.D. Ala. Apr. 17, 2025); *Chen, et al., v. Noem, et al.*, 3:25-cv-03292, ECF No. 18 (N.D. Cal. April 18, 2025); *Doe 1, et al., v. Bondi, et al.*, 1:25-cv-01998, ECF No. 23, (N.D. Ga. April 18, 2025); *Doe 1 v. Trump, et al.*, 2:25-cv-02825, ECF No. 13 (D.N.J. Apr. 18, 2025); *Doe v. Noem*, et al., 2:25-cv-01103, ECF No. 13 (E.D. Cal. Apr. 17, 2025); *Doe v. Noem*, et al., 2:25-cv-00633, ECF No. 16, (W.D. Wash. Apr. 14, 2025); *Hinge v. Lyons*, 1:25-cv-01097, ECF No. 14 (D.D.C. Apr. 17, 2025); *Mashatti v. Lyons*, 1:25-cv-01100, ECF No. 10, (D.D.C., Apr. 17, 2025); *Patel v. Bondi*, et al., 1:25-cv-00101, ECF No. 16 (W.D. Pa., Apr. 17, 2025); *Wu, et al., v. Lyons*, 1:25-cv-01979, ECF No. 9 (E.D.N.Y. Apr. 11, 2025); *B.K. v. Noem*, No. 1:25-cv-419, ECF No. 19 (W.D. Mich. Apr. 23, 2025)

In this case, Defendants have provided no process whatsoever. Defendants did not provide any notice to Plaintiff about their decision to terminate her F-1 student status; Plaintiff learned about the terminations only because her school discovered the termination in its SEVIS check and notified her. Ex. B, OIA Email.

Nor did Defendants comply with the requirements of providing adequate explanation and a meaningful opportunity to respond. Defendants provided a vague and ambiguous explanation in the SEVIS system on the grounds of "Other – Individual identified in criminal records check and/or has had their VISA revoked." *Id.* But this explanation is inadequate under the Due Process Clause. Ms. Oruganti is not aware of any facts or evidence to justify this basis for termination. She has not been convicted of any crime to trigger termination of her SEVIS record and to her knowledge her visa has not been revoked; even if it has been, that is not a valid legal basis for a SEVIS termination and thus cannot qualify as an adequate explanation. Ex. A, Oruganti Decl., at ¶ 17.

Accordingly, Defendants' failure to provide notice, adequate explanations, or meaningful opportunity for Ms. Oruganti to respond before terminating her F-1 student status violates her rights under the Due Process Clause of the Constitution. As Ms. Oruganti is likely to succeed on the merits of her due process claim, this factor weighs in her favor.

## II. Plaintiff faces irreparable and immediate harm and will continue to do so absent emergency injunctive relief

Ms. Oruganti will suffer irreparable and immediate injury if the Court does not enjoin the SEVIS termination. First, and most alarmingly, Plaintiff faces possible detention and removal from the country for being out of status. 8 U.S.C. § 1227(a)(1)(C)(i). Removal is "a drastic measure, often amounting to lifelong banishment or exile." *Sessions v. Dimaya*, 584 U.S. 148, 157, 138 S. Ct. 1204, 1213, 200 L. Ed. 2d 549 (2018) (internal quotation marks removed). Other

students subject to visa revocations and/or SEVIS terminations have been arrested and detained by ICE. *See, e.g.*, *Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 U.S. Dist. LEXIS 64831 (D. Mass. Apr. 4, 2025). And ICE states on its own website that individuals whom SEVIS identifies as having violated their immigration status are subject to "enforcement action," which could include "removal from the United States." Ex. K, ICE SEVIS Website at 4.

Second, the termination of her student status will result "in the loss 'of all that makes life worth living'" for Ms. Oruganti, who has made a significant investment in time and money to pursue her passion for agricultural engineering and embark on a career in helping farmers implement soil management reforms. *Bridges v. Wixon*, 326 U.S. 135, 147 (1945). *See* Ex. A, Oruganti Decl. ¶ 12. Her educational pursuits and career trajectory will be severely compromised if she is unable to remain enrolled at The Ohio State University and employed as a Graduate Research Associate. *Id.* at ¶¶ 20-22.

Third, this termination will cause extreme financial and academic hardship for Ms. Oruganti. She is no longer authorized to engage in any on-campus employment, or to receive her $2450 monthly stipend from her Ph.D. program. *Id.* at ¶ 20. She has thus lost her only source of income. *Id.* As an F-1 student, she is generally prohibited from engaging in off-campus employment during her course of study. *See* 8 C.F.R. § 214.2(f)(9). Plaintiff has signed an apartment lease for both the current and upcoming academic years. Ex. A, Oruganti Decl., at ¶ 20; Ex. P, Oruganti 2024-2025 Apartment Lease at 5; Ex. Q, Oruganti 2025-2026 Apartment Lease at 5. Her inability to work and thus afford rent would undoubtedly cause her to violate the payment terms of the lease, which would throw her into even more legal trouble that, among other problems, would make it even less likely she would be approved for a student visa or other status in the future. And her economic harm is irreparable because monetary damages are not

15

available in this action. *See* 5 U.S.C. § 702; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) ("The APA generally waives the Federal Government's immunity from a suit 'seeking relief other than money damages . . . .'" (emphasis added) (quoting 5 U.S.C § 702)); *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 479 (6th Cir. 2004) ("The APA's waiver of sovereign immunity applies to 'an action in a court of the United States seeking relief other than money damages.'" (emphasis added) (quoting 5 U.S.C § 702)); *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) (explaining that unavailability of money damages for APA claims counsels in favor of a finding of irreparable harm).

Moreover, the graduate research associateship is an integral part of her doctoral training and thus losing the ability to work as a GRA will result in significant academic hardship as well. Ex A, Oruganti Decl. at ¶¶ 21-22. Prior to this Court's granting of a temporary restraining order enjoining the termination of her student status, Ms. Oruganti's department had told her she would likely need to hold off on taking her three scheduled exams at the end of the spring semester due to her SEVIS termination. *Id.* at ¶ 20. Although after the grant of the TRO she was able to enroll for summer classes, she is not sure she would be able to remain enrolled this summer or in the future if she is not able to maintain the right to on-campus employment. *Id.* at ¶ 21. She will also be unable to conduct the research that is vital to her course of study.

Finally, being out of status may prevent Ms. Oruganti from ever reinstating her F-1 student status in the future. 8 C.F.R. § 214.2(f)(16)(i)(A); *see Jie Fang*, 935 F.3d at 176 (noting that a student may not have been out of valid F-1 student status for more than 5 months to apply for reinstatement). As this Court noted in its opinion granting Plaintiff's Motion for a Temporary Restraining Order, "Being out of status renders Plaintiff ineligible to apply for any type of

nonimmigrant visa while she is here." ECF No. 7 at PageID 108. *See* 8 C.F.R. § 248.1(a) (noting a noncitizen on a nonimmigrant visa must remain in valid status to apply to change status to another nonimmigrant visa). Plaintiff would be required to self deport to India to apply to renew her nonimmigrant visa, but leaving the United States would likely trigger a ground of inadmissibility under 8 U.S.C. § 1182(a)(6)(G) which would bar her from reentry to the United States for five (5) years. ("An alien who obtains the status of a [F-1] nonimmigrant…and who violates a term or condition of such status…of this title is inadmissible until the alien has been outside the United States for a continuous period of 5 years after the date of the violation.").

### III. The balance of equities and public interest strongly favor Ms. Oruganti

The balance of equities and public interest factors "merge when the Government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The public interest favors granting Ms. Oruganti's request for a preliminary injunction. There is a substantial public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994); *see also N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("The public interest is served when administrative agencies comply with their obligations under the APA."). The public's "true interest lies in the correct application of the law." *Tennessee v. Becerra*, 131 F.4th 350, 372 (6th Cir. 2025) (citing *Kentucky v. Biden*, 23 F.4th 585, 612 (6th Cir. 2022)).

The public interest also favors the amelioration of Ms. Oruganti's serious mental, educational, career, and financial harms particularly where Defendants have no countervailing interest in being allowed to take unlawful and unconstitutional action. *See* Ex. A, Oruganti Decl. at ¶¶ 20-24. As Ms. Oruganti has shown that she has suffered and will continue to suffer irreparable harm without immediate relief and that injunctive relief would cause no injury to

17

Defendants, the public interest favors relief for Ms. Oruganti.

## CONCLUSION

The Court should issue a preliminary injunction to (1) enjoin Defendants' decision to terminate Plaintiff's record in the Student and Exchange Visitor Information System ("SEVIS") and her F-1 student status, retroactive to April 8, 2025; and (2) enjoin Defendants from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences—including causing Plaintiff's visa to be revoked or detaining or removing Plaintiff—as a result of that decision, while the instant case is pending.

Respectfully submitted:

/s/Emily Brown
Emily Brown (OH # 92553)
Moritz Clinical Programs
The Ohio State U. Moritz College of Law
PO Box 10095
Columbus OH 43201
Brown.4485@osu.edu
(631) 897-9699

Kathleen Kersh (OH # 91198)
Advocates for Basic Legal Equality
130 West 2nd Street, Suite 700
Dayton, OH 45402
kkersh@ablelaw.org
(937) 535-4408

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I certify that on April 25, 2025, I filed the foregoing using the Court's CM/ECF System, and that all counsel of record will receive notice through that system.

*/s/Emily Brown*
Emily Brown
Counsel for Plaintiff