

# BUCKEYE REAL ESTATE
*Creating Real Value Since 1974*

## LEASE AGREEMENT

34 W. 9TH AVE. ● P.O. BOX 8310 COLUMBUS, OHIO 43201 ● **PHONE:** 614-294-5511 ● **FAX:** 614-299-3754 ●
**EMAIL:** leasing@buckeyerealestate.com ● **WEBSITE:** buckeyerealestate.com

### 1.1 LEASE DETAILS AND PAYMENTS:

This lease, made on <u>February 22nd, 2025</u>, between Buckeye Real Estate (hereinafter referred to as Lessor) and CHINMAYEE PRIYADARSHINI, Suriyaa V. Ramanathan, Muhammad Z. Hittam, Prasanna L. Oruganti

(hereinafter referred to jointly and severally as Lessee). Lessor, in consideration of the rent to be paid, and the covenants and conditions to be performed by the Lessee does hereby lease the following described Premises **unfurnished** $^4$ **bedroom** <u>townhouse</u> located at <u>174 W. 9th Ave. Apt. A, Columbus, OH 43201</u> (hereinafter referred to as the Premises). The term of the Lease shall be from noon of <u>08/14/2025</u> to noon of <u>08/06/2026</u>. Lessee agrees to pay as rent for Premises the total sum of $ <u>19,620.00</u>. This sum will be paid without demand in <u>twelve</u> equal monthly installments of $ <u>1,635.00</u>, after any applicable prorated rent*. The monthly rent is due in advance on or before the first day of each month during the lease term. All rent received after the due date shall be subject to a $40 late charge plus $ 1.00 per day after the 4th until paid in full. All rent is to be paid by Buckeye Real Estate's ACH system. Lessee acknowledges that they are signing the Buckeye Real Estate ACH System addendum contemporaneously with this lease. The Buckeye Real Estate ACH System Addendum memorializes the terms and conditions of the Buckeye Real Estate ACH System. There will be a $20.00 digital convenience fee due at the time of lease signing. All payments made in Office must be paid in Certified Funds. Please note that there will be a charge of $50.00 per payment made in the office, received by or on behalf of any Lessee that is a signatory to this lease. Buckeye Real Estate reserves the right to change your method of payment at any time in its sole discretion. Any payment that is returned from the bank is subject to a $35.00 bounced check charge and, if applicable, the late charge noted above.

THE LESSOR AND LESSEE AGREE TO THE FOLLOWING COVENANTS AND CONDITIONS

### 1.2 COMPLIANCE:

Lessor agrees to reasonably maintain the Premises to conform with all housing rules and regulations as they apply to the leased Premises.

### 1.3 OCCUPANCY/USE:

Lessee agrees that only those persons listed above shall occupy the Premises. No person shall be released from or added to this lease without first obtaining the written agreement of the other Lessees set forth herein and written approval of changes from Lessor. Lessee agrees that the Premises are to be occupied for residential purposes only. The Premises shall not be used or allowed to be used for any unlawful purpose, or for any purpose deemed hazardous by Lessor because of fire or any other risk or in any other manner which would disturb the peaceful, quiet enjoyment of any other occupant of the apartment community of which the Premises are a part. Lessor reserves the right of eviction for the illegal manufacture, distribution, use or other illegal activities in connection with controlled substance. A criminal conviction shall not be necessary before Lessor can institute an eviction action.

### 1.4 LOCKS/KEYS:

There will be no adding or changing of any locking devices to any access of the property or any of its parts. Lessor is authorized to remove any such devices not agreed to in writing as to their installation by Lessee. All issued keys must be surrendered to Lessor at Lessor's place of business upon termination of the lease, or a minimum charge of $120.00 per deadbolt ($95 for mailbox locks) will be assessed to Lessee. Keys may not be duplicated by Lessee. Lockouts will be billed at the maintenance rate charged to the owner. Keypad code changes during normal business hours are charged at $65 per unit. Keypad replacements are billed at a minimum of $225.00 per keypad.

Lessee Initial *CP*          Date 2/22/2025

## 2.1 PETS:

Lessee(s) shall not keep pets of any kind without prior written permission from the Lessor. If written permission is granted, Lessee agrees to pay the cost of having premises de-fleaed and de-ticked by a professional exterminator at the termination of occupancy, and Lessee agrees to maintain each pet only so long as permitted by, and in compliance with the provisions of any Rules and Regulations. Lessee also agrees to pay any sanitation cost or other damages caused by pet odor or excrement. Pet(s) require a $250.00 non-refundable pet fee. Apartment may not exceed two (2) dogs, or two (2) cats, or one (1) dog and one (1) cat. Lessee must keep pet(s) on leash no longer than six (6) feet in length and cannot leave pet on the common areas, especially unattended. Lessee is responsible for removal of pet waste from common areas and limited common areas on a daily basis. Failure to do so will constitute a material breach of this lease. If Lessee fails to remove pet waste from common areas a fee of $100.00 may be assessed per occurrence. Visiting pets are not permitted in the premises at any time.

## 2.2 PARKING:

There are no provisions made or extended in this lease for vehicles or parking. Parking may be on a regulated permit basis at Lessor's discretion. Vehicles improperly parked, parked on lawns, blocking aisles, cars, or dumpsters will be towed. Vehicles judged inoperable, unlicensed, or undrivable are subject to immediate removal at car owner's cost. No repairs or maintenance to vehicles may be conducted on Lessor's property. Lessee is liable for any damage to parking areas, building parts, signage, or structure caused by Lessee or their permittee's vehicles whether in violation of parking rules or not. All motorized vehicles are restricted to designated areas only and must use ordinary traffic lanes for ingress and egress.

## 2.3 FORBIDDEN APPLIANCES, OBJECTS & USE:

There can be no heavy objects within or on the leased Premises: water beds, concrete blocks, large aquariums, motorcycles, weights (within reason), etc. Bookshelves, posts, supports, storage, whether decorative and/or useful may not be made of these heavy objects. Appliances permitted are those built-in or furnished or a reasonable sized stove and refrigerator in the case of unfurnished Premises. Additional large appliances are not permitted in or on the Premises whether in use or not in use, these include but are not limited to grills, washers, dryers, freezers, ovens, kilns, etc. This paragraph is not intended to deny the use of ovens, toasters, air conditioners, and appliances where the Lessee is responsible for the payment of the utility required to run such appliance. The permitting use of any of the above shall be covered by the execution of a written addendum to this lease.

## 2.4 UTILITIES AND SERVICES:

The Lessee is responsible for all utilities and services, unless otherwise noted:

Electricity,

Gas,

Water, sewage and storm water,

Cable TV,

The Lessee agrees to pay for any and all utilities, related deposits and other charges on the Lessee(s) utility bills. The Lessee shall not allow utilities, other than cable, to be disconnected by any means (including non-payment of bill) until end of the Lease term or renewal period. If sub-metering or bill-back percentages are necessary for a utility, the Lessee will be responsible for said utility as if it was a direct billing and late fees will be assessed if not paid and could result in the termination of said utilities. Any premises that has utilities included is only for reasonable use and any utility usage that is excessive or misused will be the responsibility of the Lessee. If security systems are provided, it is the responsibility of the resident to establish/pay for service with the appropriate security company.

**Lessee Initial** *CP*　　　　　**Date** 2/22/2025

### 3.1 INSURANCE:

For the duration of the lease, Lessee is required to maintain and provide the minimum required insurance coverage as outlined in the Required Insurance Addendum section of this lease. Lessor is not responsible for any personal property on the Premises unless loss is due to Lessor's negligence. Lessee will be responsible for and is required to insure all of the Lessee's personal property on the Premises and hereby relieves Lessor of all risk that can be insured thereunder.

### 3.2 COMMON AREAS/AMENITIES-RIGHTS AND RESPONSIBILITIES:

Any common areas/amenities or conveniences provided to Lessees on a common basis such as for recreation, laundry, parking, sports, storage, etc. may be discontinued or changed by Lessor at anytime, it being understood that they constitute no part of the consideration for the lease. If Lessee and guests elect to use these conveniences described above, they do so at their own risk, and further expressly agree that Lessor shall not be liable in any way for damage or injury sustained in their use whether determined to be proper or improper. It is the responsibility of the Lessee to ensure that all trash is placed in the proper receptacle. Lessee agrees to pay for any purchased snow shovels/calcium chloride (no salt may be used) for snow and ice removal purposes. Lessee agrees that the replacement cost of damage, clean up to, and theft from, the common areas of the building occupied by Lessee including but not limited to laundries, hallways, stairways, lobbies, elevators, lights, signage, windows, doors and fire extinguishers will be paid for by Lessee. Any and all such repairs and replacement will be paid for as prescribed in section 3.5 herein.

### 3.3 EXTERIOR APPEARANCE AND USE:

Absolutely nothing may be shown in open windows except white or off-white colored drapes, curtains, liners or blinds. No print pattern materials, newspapers, blankets, sheets, etc. may be observed from the outside. No alcoholic beverage containers or political announcements may be displayed in windows. This lease is specifically for the living area of the Premises and not for the porch area, stairwell, stairway, hallway, step landings, elevators, lobbies, or outside areas of the building. Lessee's personal property, including interior furniture, kegs, and pools, may not be left in these areas, and may be discarded by Lessor if left unattended by Lessee and Lessee denies recourse on Lessor. Chains, locks, and cable will be removed and discarded. Lessee, permittees, or guests are prohibited from entering upon or being on any roofs, overhangs, deck coverings, or elevated structures not specifically intended for such use. Evidence of violations is just cause for Lessor to hire licensed roofers or contractors to inspect for damages, and said cost of inspection and repairs, if any, are to be paid for by Lessee as described in section 3.5 herein.

### 3.4 QUIET ENJOYMENT AND RULES:

Lessee shall have peaceful and quiet enjoyment of Premises, provided all lease terms, rules and regulations are met. This does not cover disturbances and noise by others which are a civil or criminal matter, not the responsibility of the Lessor. Lessor may institute legal action against anyone denying Lessee peaceful and quiet enjoyment of Premises. It is agreed all rules and regulations established by the Lessor are as much a part of this lease as if contained herein. All such rules and regulations are published and available at the office during normal business hours for Lessee's examination and to receive copies and Lessee agrees to abide by them. All such rules and regulations so established are for the well being and benefit of Lessee and do not violate established governmental laws. Occupancy at any time may not exceed one person per 30 square feet of gross living area of leased Premises. This definition of space for a group gathering or party of people does not include hallways, stairways, patios or walkways, whether for private or public access to or from the leased Premises. Lessees responsible for invitation or conducting of any gathering events are additionally responsible to see that no persons attending any planned or implied gathering or party sit, stand, stay or loiter in any public or semi-public access immediately or remotely adjacent to the leased Premises.

### 3.5 CONDITION OF PREMISES AND REPAIRS:

Lessee accepts the Premises AS IS, except for conditions materially affecting the health or safety of ordinary persons, and except as otherwise indicated on the move-in inspection form described below, the Lessor makes no implied warranties. Lessor shall provide a move-in inspection form to Lessee on or before move-in. Within seven (7) days after move-in, Lessee shall note all defects or damages on the form and return it to Lessor for a receipted copy; otherwise the Premises shall be presumed to be in clean, safe and good working condition. Lessee shall use customary diligence in care of the Premise and common areas. Whenever damage is caused by Lessee, Lessee's guests, permittees, or occupants due to carelessness, misuse, neglect, or failure to notify Lessor of any need for repairs, Lessee agrees to pay (1) the cost of all repairs, and if said repairs are done by Lessor to do so by the due date of the next rental payment following work done and billed to Lessee; and (2) rent for the period the unit is damaged whether or not the unit is habitable. All glass/screens, doors, door locks, mailbox doors, mailbox locks and their parts, and all window glass and window parts are the responsibility of Lessee for repair and replacement. They are to be repaired by Lessee within three (3) days of any malfunction or breakage. Lessor is to be notified that the damage has occurred and when the repairs are finished so that Lessor may inspect and approve the work. All such breakage, repairs, and inspections shall be recorded and kept in the lease file. If not repaired promptly, Lessor may make necessary repairs for safety, security and well being of the Premises and the cost of said repairs, will be billed to Lessee. Lessee may not perform any painting, wallpapering, carpeting, electrical changes, or other alterations to the Premises except as authorized by Lessor in writing. No holes or stickers are allowed inside or outside the unit, however, a reasonable number of small nail holes for picture hanging are permitted. Lessee shall not disable, disconnect, alter or remove any property, including security devices, alarms systems, smoke/carbon monoxide detectors, appliances, furniture or screens. Nothing can be stored in furnace areas or furnace rooms. Smoke/carbon monoxide detectors are provided, as required by law and/or as a courtesy to Lessee. Smoke/carbon monoxide detectors are not infallible and it is the Lessee's responsibility to check any smoke/carbon monoxide detectors on a daily or frequent basis and report any malfunction to Lessor. Replacement of the batteries in the smoke/carbon monoxide detectors is the sole responsibility of Lessee. Light bulbs are to be replaced by Lessee and at Lessee's expense. When moving out, Lessee shall surrender the Premises in good condition, reasonable wear excepted.

Lessee Initial *CP*      Date 2/22/2025

## 4.1 ENTRY AND WAIVER:

After 24 hours notice, Lessor or Lessor's representatives may enter to inspect, show, maintain, repair or for other valid business purposes. A request for repairs shall be deemed a waiver of notice to enter. Lessee further agrees to assume financial responsibility for any charges made for time by a subcontractor who is hampered from completing his work at the Premises by any action of the Lessee or any guest of Lessee or conditions caused by Lessee.

## 4.2 EMAIL NOTIFICATION:

Lessor will send resident notifications via email whenever possible. Notifications include, but are not limited to, general resident notification, lease account statements, notice to enter, and notice of violation. Lessor will use email given by the lessee on the Lease Application.

## 4.3 GUARANTEE:

Lessor herby retains the sole right to require lessee to obtain a guarantee or prepayment of last month's rent. It is understood that multiple guarantee/guarantor signatures will or may be secured in connection to this lease, and that failure to secure said additional guarantors will not eliminate or excuse any obligation of guarantor and lessee(s).

## 4.4 NON-LIABILITY:

The Tenant acknowledges that any security measures provided by the Landlord shall not be treated by the Tenant as a guarantee against crime or a reduction in the risk of crime. The Landlord shall not be liable to the Tenant, the Tenant's guests, or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. The Landlord shall not be liable to the Tenant, guest or occupant for personal injury or damage or loss of personal property from fire, flood, water leaks, rain, hail, ice, snow, smoke, lightning, wind, explosions, and interruption of utilities unless caused by the Landlord's negligence. The Landlord has no duty to remove ice, sleet, or snow; but the Landlord may do so in whole or in part, with or without notice. If the Landlord's employees are requested to render services not contemplated in the Lease, the Tenant shall hold the Landlord harmless from all liability for same.

## 4.5 SECURITY DEPOSIT:

The Lessee shall deposit with Lessor the sum of $ 1,635.00 as security for Lessee's faithful performance under the Lease and by law. Lessee acknowledges that the security deposit may not be maintained by the Lessor and may be used to pay expenses of the property owner or paid to the property owner. The Lessee agrees the deposit is not an advance payment of rent and does not relieve the obligation to pay rent including rent for the last month of occupancy. Lessee has elected to pay the total security deposit in the following manner:

✗ Pay the security deposit in full on or before the start date of your lease with a discount of $100 per bedroom.

Pay the security deposit over 3 monthly installment payments.

Pay the security deposit over six monthly installment payments.

This is a renewal lease, lease change, or a roommate exchange, and the original security deposit will carry over.

In the event Lessee elects to make installment payments for their security deposit, the installments shall be due on the same day as the month rent payment pursuant to the lease agreement and which may be paid together with the month rent payments. In the event Lessee fails to pay one of their installment payments, it shall be considered a material breach of the lease agreement. At the expiration of the lease term Lessor may apply the security deposit for past due rent, fees, utilities, and/or the cost of repairing damage beyond reasonable wear and tear to the Premises. Also, abandonment or vacating of the Premises by Lessee before the end of the term of the lease shall result in Lessor deducting damages he/she has incurred from the security deposit. Each Lessee shall be jointly and severally responsible for all losses incurred by Lessor occasioned by the tenancy. Lessee agrees to provide Lessor, in writing, a forwarding address upon vacating the Premises. Lessor agrees to return to the Lessee the security deposit, or whatever part has not been applied in payment of Lessee's obligations under the lease, within thirty (30) days after expiration of the lease or delivery of possession of the Premises to Lessor, whichever is last to occur. All deductions will be itemized in writing by Lessor. Lessor may seek damages in excess of the security deposit and Lessee agrees to reimburse Lessor for any rent, fees, utilities due and/or damages exceeding the security deposit. One check will be issued for the return of security deposit funds and the check will be issued to all Lessees unless there are more than three lessees, in which case the Lessees will designate one Lessee to whom the check will be issued.

**Lessee Initial** *CP* **Date** 2/22/2025

## 5.1 TERMINATION DATE OF LEASE:

You acknowledge that we lease primarily to students at the Ohio State University. As a result we are required to make your unit ready for subsequent incoming residents at the beginning of a school calendar year in a period of a few days. As a result, after your lease term expires, unless you renew your lease, you will be expected to remove all personal property from your unit on or before your lease expiration date. Landlord will incur damages equal to the amount of the new tenant's lease entering your unit for the entire subsequent lease year if your property remains in your unit and Landlord cannot provide the premises to a new tenant within three (3) calendar days. Therefore, Landlord shall have the right to access the Premises for the purpose of removing any personal property of Tenant(s) remaining in the Premises after the lease termination date stated in the lease agreement. Tenant(s) acknowledge that they hereby contractually agree that all personal property remaining in the Premises after the lease termination date is abandonment property that can be disposed of by Landlord, and Tenant(s) hereby agree to release Landlord, hold Landlord harmless and indemnify Landlord of any from all liability and/or third party claims stemming from Landlord's removal of any personal property after the expiration of Tenant(s) lease term.

## 5.2 DEFAULT/HOLDOVER:

In the event Lessee is in default of any of the terms or obligations of the lease, violates and/or fails to comply with any of the covenants, terms or conditions of the lease, or any community policies herein or hereafter adopted by Lessor said default shall constitute grounds for termination of the lease and/or eviction by Lessor. It is expressly understood and agreed that Lessee shall be and remain liable for any deficiency in rent and damages to the end of the lease term. In the event of legal action being initiated against the lessee, a fee of $300 will be charged to the lessee for the purpose of reinstatement. There shall be assessed a fee of one month's rent for the process of releasing a lease for the unit after default by the Lessee. No tenancy of any duration shall be created by the holding over of this lease. The lease termination date shall end all rights to the Premises that Lessee may enjoy. If Lessee holdsover, Lessee is responsible for all costs/damages created by the holdover, including but not limited to expenses incurred in providing alternative/interim housing for subsequent Lessee(s). In the event the Premises become unfit for occupancy for a period of 30 days, the lease shall terminate and be void unless situation causing it is created by Lessee and/or if it is caused by the property and/or the materials of Lessee, Lessee's guests or permittees on the property of Lessor.

## 5.3 DELAY IN POSSESSION:

Delay by Lessor in delivering possession of the Premises shall suspend rent during such delay, but shall not relieve Lessee of any other obligations nor render Lessor liable for such delay. Lessor will provide suitable alternative/interim housing until Premises is ready for occupancy. Lessee may terminate by notice (in writing) for delay in delivery of Premises extending beyond thirty days.

## 5.4 ENTIRE AGREEMENT:

The Lease and attached Addenda of this lease are the entire agreement between Lessor and Lessee. No representations oral or written, not contained herein or attached hereto, shall bind either party, except any attached Addendum.

## 5.5 BINDING EFFECT:

The Lease is binding on Lessor, Lessee, and co-signers on their respective heirs, assigns, successors, executors, and administrators.

## 5.6 RENEWAL OF THIS AGREEMENT:

The undersigned hereby acknowledge that this lease can be renewed by all or a portion of the original signatories to this lease. Landlord will notify Residents of the terms and conditions of a lease for subsequent lease terms during Ohio State University's fall semester. If all Residents who sign this lease agree to sign a lease for an additional term, a new lease must be executed on or before the lease termination date, but while the unit is still available. In the event that less than 100% of the signatories to this lease decide to execute a lease for a subsequent term, a new lease agreement will be executed by the Residents who remain in the unit for the additional term, and any New Residents will become a party to the subsequent lease. Residents hereby unequivocally acknowledge and agree that their security deposit will NOT be returned to them if any of the signatories to this lease execute a lease for a subsequent term and remain in the Premises for another year or years. Residents stipulate and agree that if less than 100% of the signatories to this lease decide to remain in the unit for a subsequent term, the Residents who remain in this unit at the time of the renewal will maintain their belongings in the premises through the duration of the renewal term, and as a result, if this lease is renewed by even one of the individuals who are signing this lease, the total security deposit received by Landlord will be applied to the subsequent lease term. Residents shall seek any reimbursement of their security deposit from the New Residents who will be signing the renewal lease. Moreover, any New Residents who sign the renewal lease will accept the condition of the premises from the time that the current lease is executed. Landlord will seek damages above and beyond normal wear and tear from the Residents who deliver full possession of the property to Landlord at the expiration of all leases, and Landlord will return the security deposit at the time when all signatories to this lease vacate the Premises.

Lessee Initial _CP_ _____ Date 2/22/2025

## Sign and Accept

174 W. 9th Ave. Apt. A

### 6.1 WITNESS:

THIS LEASE, PAGES 1-6 (and additional Addenda) CONTAINS THE ENTIRE AND FINAL AGREEMENT BETWEEN THE PARTIES HERETO (INCLUDING GUARANTORS). IN TESTIMONY WHEREOF, SAID PARTIES HAVE HEREUNTO SET THEIR HAND ON THE DAY AND YEAR HEREIN WRITTEN. THIS LEASE MUST BE NOTARIZED, OR WITNESSED BY LESSOR, OR LESSOR'S AGENTS:

### 6.2 GUARANTEE:

**IF APPLICABLE;**

**FOR VALUABLE CONSIDERATION**, the receipt and sufficiency of which are hereby acknowledged, the undersigned ("Guarantor", whether one or more than one) does hereby absolutely, irrevocably, personally and unconditionally guaranty to Buckeye Real Estate ("Landlord") the full, complete, absolute and punctual performance by ("Tenants") jointly and severally of all of Tenants' obligations under this lease. In connection with this Guaranty, Guarantor covenants and agrees that no modification, waiver, addition or deletion of tenants or amendment of any or all of the terms or conditions of the Lease shall in any manner alter, eliminate, excuse or relieve any obligations of Guarantor under this Guaranty, and Guarantor hereby waives notice of Tenants' default under the Lease, notice of any such modification of, waiver of or amendment to the Lease and notice of acceptance of this Guaranty, demand for payment, protest, notice of protest and notice of non-payment or non-performance, and agrees that the time for the payment of any amounts under the Lease or any extension or renewal thereof or for the performance of any other term or condition contained therein may be waived or extended from time to time without notice to or the consent of Guarantor. Guarantor further waives any and all defenses and rights of setoff whether arising out of or in connection with the Lease, this Guaranty or otherwise.

Lessees and Guarantor shall be jointly and severally responsible for the rent and all terms and conditions including negligence, as contained in the apartment lease and under Ohio law. The guarantor acknowledges that he/she is not a tenant as defined by law and hereby waive any notice required by the Ohio Revised Code Section 5321 et. seq. or 1923 et. seq.

The undersigned hereby certifies under the penalty of perjury that the information contained in this application and any other attached financial information provided are true and accurate and that is such information is later discovered to be false, Lessor may terminate the undersigned's tenancy (if any) and evict the undersigned forthwith. Any informality in securing all or any Guarantor signatures shall not waive or affect the responsibility and enforceability of all parties to this agreement, or the lease agreement.

### 6.3 ACCEPTANCE OF LEASE:

This is a legally binding document. By signing your name, you are consenting to using electronic means to sign this contract accepting the lease agreement and addendum. An electronic copy will be available on your Tenant Portal when all parties have signed.

*Chinmayee Priyadarshini*
LESSEE SIGNATURE — 2/22/2025 — DATE

*Suriyaa Valliapan Ramanath*
LESSEE SIGNATURE — 2/22/2025 — DATE

*Muhammad Zubair Hittam*
LESSEE SIGNATURE — 2/22/2025 — DATE

*Prasanna Lakshmi Oruganti*
LESSEE SIGNATURE — 2/22/2025 — DATE

_____
LESSEE SIGNATURE — _____ — DATE

_____
LESSEE SIGNATURE — _____ — DATE

_____
LESSEE SIGNATURE — _____ — DATE

_____
LESSEE SIGNATURE — _____ — DATE

_____
LESSEE SIGNATURE — _____ — DATE

_____
LESSEE SIGNATURE — _____ — DATE

_____
LESSEE SIGNATURE — _____ — DATE

### 6.4 OWNER:

THIS LEASE IS HEREBY ACCEPTED BY BUCKEYE REAL ESTATE, AS AGENT FOR* Windstar Development LTD

*Justin A. Garland*
Property Management Signature — 2/27/2025 — DATE



## ADDITIONAL TERMS

34 W. 9TH AVE. ● P.O. BOX 8310 COLUMBUS, OHIO 43201 ●**PHONE:** 614-294-5511 ● FAX: 614-299-3754 ●
**EMAIL:** leasing@buckeyerealestate.com ● **WEBSITE:** buckeyerealestate.com

### 1.1 ADDITIONAL TERMS

Each additional roommate beyond the number of bedrooms will increase the rent $175 per month.

### 1.2 ADDITIONAL DOCUMENTS

**The following attached addenda and additional terms are a part of the Lease (as initialed on pages 1-6 by Lessor and Lessee).** (*Forms will be provided on your move-in day).

**Lead Disclosure**

**Required Insurance**

**Integrated Pest Management**

**BRE Lease Packet**

**Lease Acknowledgement**

***Move-in Inspection Form**

| | |
|---|---|
| *Chinmayee Priyadarshini* | 2/22/2025 |
| LESSEE SIGNATURE | DATE |
| *Suriyaa Valliapan Ramanath* | 2/22/2025 |
| LESSEE SIGNATURE | DATE |
| *Muhammad Zubair Hittam* | 2/22/2025 |
| LESSEE SIGNATURE | DATE |
| *Prasanna Lakshmi Oruganti* | 2/22/2025 |
| LESSEE SIGNATURE | DATE |
| | |
| LESSEE SIGNATURE | DATE |
| | |
| LESSEE SIGNATURE | DATE |
| | |
| LESSEE SIGNATURE | DATE |
| | |
| LESSEE SIGNATURE | DATE |
| | |
| LESSEE SIGNATURE | DATE |

_____     _____
LESSEE SIGNATURE                                               DATE


_____     _____
LESSEE SIGNATURE                                                DATE

**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

Lead Warning Statement

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

Lessor's Disclosure

1. (a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    (ii) _JAG_ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

2. (b) Records and reports available to the lessor (check (i) or (ii) below):

    (i) _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

    (ii) _JAG_ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Lessee's Acknowledgment (initial)
(c) _____ Lessee has received copies of all information listed above.
(d) _____ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

Agent's Acknowledgment (initial)
(e) _____ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852(d) and

is aware of his/her responsibility to ensure compliance.

Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | |
|---|---|
| _Just A. Gaul_  8/20/22 | _Prasanna Lakshmi Oruganti_  2/22/2025 |
| Lessor/Agent                    Date | Lessee                    Date |
| _Chinmayee Priyadarshini_  2/22/2025 | |
| Lessee                    Date | Lessee                    Date |
| _Suriyaa Valliapan Ramanath_  2/22/2025 | |
| Lessee                    Date | Lessee                    Date |
| _Muhammad Zubair Hittam_  2/22/2025 | |
| Lessee                    Date | Lessee                    Date |



## Required Insurance Addendum

34 W. 9TH AVE. ● P.O. BOX 8310 COLUMBUS, OHIO 43201 ● **PHONE:** 614-294-5511 ● FAX: 614-299-3754 ●
**EMAIL:** leasing@buckeyerealestate.com ● **WEBSITE:** buckeyerealestate.com

This Addendum is attached to and becomes a part of the Residential Lease Agreement. For the duration of the Lease, Lessee is required to maintain and provide the following minimum required insurance coverage:

$100,000 Limit of Liability for Lessee's legal liability for damage to Lessor's property for no less than the following causes of loss: fire, smoke, explosion, backup or overflow of sewer, drain or sump, and water damage ("Required Insurance").

Lessee is required to furnish Lessor with evidence via Tenant portal uploading (Lessor will not enter information on behalf of Lesses) of Required Insurance prior to occupancy of leased premises and or at least 10 days prior to lease renewal start date. If at any time Lessee does not have Required Insurance, Lessee is in breach of the Lease and Lessor shall have, in addition to any other rights under the Lease, the right but not the obligation to purchase Required Insurance coverage protecting the sole interest of the Lessor and seek contractual reimbursement from the Lessee for all costs and expenses associated with such purchase. This may be referred to as "force placed insurance".

Lessee may obtain Required Insurance or broader coverage from an insurance agent or insurance company of Lessee's choice. If Lessee furnishes evidence of such insurance and maintains the insurance for the duration of the Lease, then nothing more is required. If Lessee does not maintain Required Insurance, the insurance requirement of this Lease may be satisfied by Lessor, who may purchase such coverage through the Lessor's Legal Liability Insurance Policy ("LLIP"). The coverage provided under the LLIP will provide the Required Insurance coverage listed above. An amount equal to the total cost to the Lessor for the LLIP coverage shall be charged to Lessee by the Lessor as a recoverable expense under the Lease. Some important points of this coverage, which Lessee should understand are:

    1. LLIP is designed to fulfill the insurance requirement of the Lease. Lessor is the Insured under the LLIP. This is single interest forced placed insurance. Lessee is not an Insured, Additional Insured or beneficiary under the LLIP. All loss payments are made to the Lessor.

    2. LLIP coverage is NOT personal liability insurance or renters insurance. LLIP does not cover the Lessee's personal property (contents), additional living expenses or liability arising out of bodily injury or property damage to any third party. If Lessee requires any of these coverages, then Lessee should contact an insurance agent or insurance company of Lessee's choice to obtain personal liability insurance or renters insurance to protect Lessee's interests.

    3. Coverage under the LLIP may be more expensive than the cost of Required Insurance obtainable by Lessee elsewhere. At any time, Lessee may contact an insurance agent or insurance company of their choice for insurance options to satisfy the Required Insurance under this Lease.

    4. If Lessee has purchased Renters Insurance and at any time allows such Renters Insurance to lapse in breach of the Lease Agreement, Lessor may purchase Lessor Insurance without notice and add the total cost associated therewith to Lessee's monthly rent payment.

    5. Licensed insurance agents may receive a commission on the LLIP.

    6. The total cost to the Lessee for the Lessor obtaining LLIP shall be **$10.50** per month, subject to no proration. This is an amount equal to the actual premium charge to the Lessor including any premium taxes and fees due to state governing bodies. Additionally, an Administration Fee in the amount of **$4.50** to be retained by the Lessor for processing and handling will be charged.

    7. In the event that loss or damage to Lessor's property exceeds the amount of Required Insurance, Lessee shall remain contractually liable to Lessor for such amount. In the event of liability to any other party for bodily injury or property damage, Lessee shall remain liable to such other party.

    8. It shall be the Lessee's duty to notify Lessor of any subsequent purchase of Renters Insurance.
As used in this Addendum: "Lease" may be interchangeable with "Lease Agreement"; "Lessee" may be interchangeable with "Resident" or "Tenant", and "Lessor" may be interchangeable with "Landlord" or "Owner".
Scheduling of the premises under the LLIP is not mandatory and Lessee may purchase Required Insurance from an insurance agent or insurance company of Lessee's choice at any time and coverage under the LLIP will be terminated by the Lessor.

*Chinmayee Priyadarshini*
LESSEE SIGNATURE

2/22/2025
DATE

*Suriyaa Valliapan Ramanath*
LESSEE SIGNATURE

2/22/2025
DATE

*Muhammad Zubair Hittam*
LESSEE SIGNATURE

2/22/2025
DATE

*Prasanna Lakshmi Oruganti*
LESSEE SIGNATURE

2/22/2025
DATE

LESSEE SIGNATURE

DATE

LESSEE SIGNATURE

DATE

LESSEE SIGNATURE

DATE

LESSEE SIGNATURE

DATE

LESSEE SIGNATURE

DATE

LESSEE SIGNATURE

DATE

LESSEE SIGNATURE

DATE



## INTEGRATED PEST MANAGEMENT PLAN

34 W. 9TH AVE. ● P.O. BOX 8310 COLUMBUS, OHIO 43201 ● **PHONE:** 614-294-5511 ● FAX: 614-299-3754 ●
**EMAIL:** leasing@buckeyerealestate.com ● **WEBSITE:** buckeyerealestate.com

### 1.1 OHIO REVISED CODE SECTION 5321.05

OHIO REVISED CODE SECTION 5321.05 OF THE LANDLORD-TENANT ACT REQUIRES, IN PART, ALL TENANTS TO:

(A)(1) Keep that part of the premises that he/she occupies and uses safe and sanitary;

(A)(2) Dispose of all rubbish, garbage, and other waste in a clean, safe and sanitary manner;

(A)(5) Comply with the requirements imposed on tenants by all applicable State and Local housing, health and safety codes;

### 1.2 PREVENTION

Residents acknowledges that he/she will use their best efforts and care to avoid creating any conditions which would introduce, cause or promote the presence of bugs, vermin and/or insects in the premises or the community property. A Resident's infestation prevention responsibilities shall include, but are not limited to, the following;

1. Resident acknowledges receiving a copy, and agrees to comply with, Landlord's Integrated Pest Management Plan ("IPM") concerning Bed Bugs prior to taking occupancy of the premises;
2. Do not feed wildlife or stray animals anywhere on community property;
3. Pet food shall be kept in a sealed container; Pets shall be regularly inspected and treated for fleas and other parasites;
4. Resident shall regularly vacuum and clean premises to maintain health and safety standards;
5. Resident shall not allow trash to accumulate inside or outside the premises and shall remove trash from the premises in a plastic bag and place inside the dumpster and/or trash cans and be sure that lids and doors are closed.
6. Resident shall not place any furniture, clothing or any other items in the premises that were found or retrieved in or around any dumpster or other trash collection site;
7. Resident remains responsible to inspect and ensure that used furniture and clothing is thoroughly inspected for bugs, vermin and/or insects prior to placing said items on the premises;
8. Landlord recommends that mattresses used or stored in the premises be wrapped or sealed in a mattress cover made or vinyl, plastic or other impervious material that can be sealed.

### 1.3 DUTY TO NOTIFY THE LANDLORD

Resident shall immediately report any infestation of bugs, insects and/or other vermin to Landlord in writing. Resident understands that the cost of extermination, and possibly the invasiveness of extermination, will be significantly reduced if the problem is reported as early as possible.

### 1.4 COOPERATION WITH EXTERMINATION AND TREATMENT EFFORTS

Resident understands that the Landlord's extermination and treatment efforts may necessitate Resident vacating the premises either temporarily or permanently in order for an infestation to be eradicated in the premises or on the project grounds. Resident shall fully cooperate with the Landlord in preparing the premises for extermination treatments based upon the guidelines provided by Landlord's pest control professional. Failure to fully cooperate with Landlord's instructions or with the Landlord's pest control professional's instructions or failure to provide access to the premises, given reasonable advance notice to enter for extermination and/or treatments, shall constitute grounds for an eviction. If the Landlord is required to reschedule extermination and/or treatment efforts due to the actions or inactions of the Resident, then the Resident will be billed for all expenses associated with rescheduling.

## 2.1 COST OF EXTERMINATION

Landlord reserves the right to charge the cost of treatment, eradication of infestation, and cleaning of infested areas to the Resident. If the Resident vacates the leased premises and bed bug infestation is subsequently discovered, Resident will be held responsible for the full cost of treatment, eradication, and cleaning of the leased premises. In the event that infestation spreads from the leased premises, Resident may also be held responsible for the expense of treatment of such other areas infected. If it becomes necessary for the resident to vacate the premises temporarily or permanently as part of the eradication/treatment efforts, the Landlord shall not be liable for any cost of relocation. In the event Resident refuses to pay any invoice submitted by Landlord to Resident for the cost of extermination of the infestation, this sum shall become additional rent due and payable with the next monthly rent installment. In the event any additional rent is unpaid with the next monthly rent installment, the entire rental payment may be refused as a partial rent payment.

## 2.2 TERMINATION OF TENACY

Landlord may terminate Residents' tenancy and Residents shall vacate the premises if any of the following apply:

1. Residents' actions or inactions contribute to or result in a pest infestation;
2. Residents' action or inactions prevent or hinder Landlords' treatment of an infestation;
3. Landlord, in Landlords' sole discretion, or pursuant to the opinion of a licensed pest control professional, determines that the infestation in the premises and/or adjoining apartments cannot successfully or properly be treated with Residents continuing to live in the premises;
4. Noncompliance with any other terms of this Provision.

*Chinmayee Priyadarshini*  
LESSEE SIGNATURE      2/22/2025  
DATE

*Suriyaa Valliapan Ramanath*  
LESSEE SIGNATURE      2/22/2025  
DATE

*Muhammad Zubair Hittam*  
LESSEE SIGNATURE      2/22/2025  
DATE

*Prasanna Lakshmi Ouganti*  
LESSEE SIGNATURE      2/22/2025  
DATE

_____  
LESSEE SIGNATURE      _____  
DATE

_____  
LESSEE SIGNATURE      _____  
DATE

_____  
LESSEE SIGNATURE      _____  
DATE

_____  
LESSEE SIGNATURE      _____  
DATE

_____  
LESSEE SIGNATURE      _____  
DATE

_____  
LESSEE SIGNATURE      _____  
DATE

_____  
LESSEE SIGNATURE      _____  
DATE



**BRE LEASE PACKET**

34 W. 9TH AVE. ● P.O. BOX 8310 COLUMBUS, OHIO 43201 ● **PHONE:** 614-294-5511 ● FAX: 614-299-3754 ●
**EMAIL:** leasing@buckeyerealestate.com ● **WEBSITE:** buckeyerealestate.com

---

## *1.1 BUCKEYE REAL ESTATE LEASE PACKET: YOUR GUIDE TO LIVING IN A BUCKEYE RENTAL*

All About Your Move-In Date (Section 1.2)

Keeping In Touch Via Email and Text (Section 2.2)

Your ACH and Resident Portal (Section 4.1)

Move-In Maintenance Information (Section 5.1)

Exterior Use (Section 6.1)

Important Phone Numbers (Section 8.1)

Sign and Acknowledge (Section 9.2)

Renewals (Section 2.1)

Rent and Lease Info (Section 3.1)

Parking (Section 4.2)

Everyday Maintenance (Section 5.2)

Utility Information (Section 7.1)

Resident Rewards - BRE Perks (Section 9.1)

---

## *1.2 YOUR MOVE-IN DATE...*

### New Leases

According to your lease agreement, your lease begins at noon on ___08/14/2025___. Our office will be **extremely** busy during the turnover period between July 20th and August 25th. Units are inspected soon after the keys are returned and the turnover process of painting, cleaning, carpet cleaning, and any major maintenance is started. Once the turnover process has been completed on a unit, the leasing staff inspects it. If the unit is ready for occupancy before the official move-in date, the leasing staff <u>will contact all members of the lease agreement via email to inform them that the unit is ready for move in.</u>

PLEASE understand that there is NOTHING that can be done to 'speed up' the turnover process on a specific unit. Its date of completion depends solely on the amount of work it requires, and the availability of resources. Our office turns an average of 500 units per year in less than two weeks. Repeat phone calls to the office during this time only serve to slow down the turnover process. If a unit is completed before the lease start date, an email will be sent to the residents of the address to inform them that it is time to get keys. Otherwise, please plan on coming at noon on your move-in date.

Once your unit is ready, one person on lease is required to come to our office to check-in. You will receive your unit code (or key if applicable), mailbox key (if applicable), and the Move-In Inspection form. If no one on lease can make it, please let us know and we will have you sign a release form with the legal name of the person you are designating to check-in for you. Make sure they bring ID.

If you absolutely need to get into your apartment early, you can opt to take the unit in 'as-is condition'; meaning that your apartment-home will not receive an inspection, painting, cleaning, or carpet cleaning. The new residents will take the unit over directly from the current residents and this is only recommended if you personally know the current residents of the property. If you decide to take the unit in 'as-is condition', **all lessees** will need to sign the approval BEFORE June 30th. Contact the leasing manager at julie@buckeyerealestate.com to begin procedures for this option.

## 2.1 RENEWALS...

### Renewals

Rental season generally begins just after August as residents try to secure their fall housing early. Our office begins receiving calls in May for the FOLLOWING school year. Buckeye Real Estate will not begin showing our current residents' apartment-homes until we have given them an opportunity to renew their current lease. **All our residents are given a specific date to inform us of their renewal intentions and this usually takes place the first or second week of October, see your personal renewal letter for your specific renewal date and instructions. Renewal letters are generally emailed to all our residents before the end of September.**

Please review the **Renewal Guidelines here.**

Please note we are unable to extend the lease's end date under any circumstances. Your lease end date is firm, and we cannot and will not negotiate this. We only have 2 weeks to prepare 500+ apartment-homes for the next move-ins. This is the same reason we cannot guarantee any early move-ins. Please be respectful of this and be prepared to be completely vacated from your unit by noon on your move-out date.

## 2.2 KEEPING IN CONTACT VIA EMAIL AND TEXT...

### Emails

Per section 4.2 of your lease agreement, our primary form of contact with our residents is via email.

### 4.2 EMAIL NOTIFICATION:

Lessor will send resident notifications via email whenever possible. Notifications include, but are not limited to, general resident notification, lease account statements, notice to enter, and notice of violation. Lessor will use email given by the lessee on the Lease Application.

It is important that you add

@buckeyerealestate.com

@buckeye.appfolio.com

to your list of accepted senders to avoid our notifications dropping into your SPAM or CLUTTER folders.

### Texts

We understand that many of our residents work and or take classes during the day and may be unable to respond to a phone call or may not be checking their emails during that time. We will often send text messages as a less intrusive method of quickly getting in contact with you. This is usually delegated for instances that pertain directly to you and your apartment such as needing immediate access to your unit or reaching out about needing a vehicle moved.

## 12 Equal Monthly Installments

Please note that the first paragraph of your lease explains that the total sum of your rent will be paid in twelve equal monthly installments. Your first full rent payment is due at the time of signing your lease and the remainder of your rent payments are on the first of each month beginning in September through the month of July.  **The term of your lease is 'pre-prorated' for a 50-week period.**

## First Month's Rent

Upon signing your lease, a non-refundable fee equal to one month's rent is due to secure your apartment. This fee is transferred to your first month's rent payment upon key pick up.

## Security Deposit

Your security deposit is just that, a deposit.  It is NOT an advance rental payment and cannot be used towards rent. The deposit is due on or before your lease start date. Deposits are processed at the end of the lease term (if you renew at the end of the last renewal term).

## Guarantor – Cosigner OR Prepayment of Last Month's Rent

Leases require a guarantor on the lease.  A guarantor can be a co-signer, or a prepayment of last month's rent.  If you have roommates, you must all agree on which form of guarantor because you are signing a joint and severally liable lease.

If you renew your lease, you will need to update your guarantor options. All lessees will still need to agree on the option. If you did co-signers, the co-signers would need to resign for the renewal lease. If you did a prepayment of last month's rent, the prepayment will carry over to the last month of the renewal lease. If rent increases for the renewal, you will need to pay the difference with your next monthly rent to keep it current. (ex. Rent is $1,000 and goes up to $1,005 for your renewal. You would owe $5 for the prepayment of the last month's rent that you already prepaid at $1,000 upon move in.)

## Pet Policy

Section 2.1 of your lease allows pets PROVIDED you have prior authorization from our office. This requires the payment of a $250 non-refundable pet fee per pet, proof of current vaccinations and anti-flea/tick treatment, and a pet addendum completed in our office.  Please contact Julie@buckeyerealestate.com with questions and view our full **Pet Policy here**.

## Utilities and Minor Repairs

Utilities are marked in section 2.4 of the main lease. If a utility is marked, it is INCLUDED in the rent.  Many residents are curious as to why 'Minor Repairs' are the resident's responsibility. Minor Repairs are any commonsense repairs that can be handled by residents in their homes, such as but not limited to; plunging the toilet, changing the light bulbs, resetting breaker switches, unjamming a disposal (foreign object), drywall damage caused by residents, breaking blinds, etc. More information on repairs **can be found here**.

## Renter's Insurance

All residents, according to your lease agreement section 3.1, must obtain renter's insurance. Renter's insurance is an affordable way to make sure your belongings are covered in the case of theft, fire, water, damage, etc. and you are covered in the event your negligence causes major damage to the property (ex. Turning the heat off in freezing temperatures causing pipes to freeze and burst flooding the apartment, resident caused fire,). If a resident does not have renters' insurance, they will be automatically enrolled into our Liability Policy as outlined by the Required Insurance Addendum of this lease.

## 4.1 WHAT YOU NEED TO KNOW ABOUT YOUR ACH RENT PAYMENTS AND THE RESIDENT PORTAL...

**Buckeye Real Estate uses an online payment system. This is a service for your convenience.**

How it works:

- You will use the same portal that you activated to sign your lease agreement.

- Using your portal, you will be able to pay your rent and any other charges online directly from your bank account.

- Payments can be made by debit or credit card for a FEE. We suggest using your checking account. (You will need your bank account information including account number, routing number, or simply a copy of a check)

- Each resident will have their own portal, allowing them to submit their own payments separately. **DO NOT SHARE YOUR LOGIN WITH ANYONE AS YOUR PERSONAL PAYMENT INFORMATION IS UNIQUE TO YOUR OWN RESIDENT PORTAL**. In addition, your signature for signing documents is unique to your own resident portal. So, this makes it even more essential that you do not share the login information. Please keep in mind that the Resident Ledger is shared between all roommates. While the total rent will show due, it is possible to just pay your portion by changing the amount in the payment box or setting up autopay for the amount you want to pay each month.

- Rent payments are due in full on the 1st of each month by 11:59 PM. There are no exceptions. If rent is not paid by then, the late fee will be added to the account by the following business day. More information about fees, payment terms, setting up autopay, and more can be found on our **website here**.

## 4.2 PARKING...

**Buckeye Real Estate Lots:**

Parking is never guaranteed, and the Buckeye Real Estate lease agreement makes no provisions for parking. As anyone residing in the campus area knows, parking is at a premium. Many of our properties have off-street parking available for our residents. Sometimes the parking is abundant; sometimes it is limited depending on the space available and the number of residents per unit.

Residents are given the opportunity to purchase a parking permit for their vehicle to park in their lot **if parking is available**. Parking permits do not guarantee that you will have a space to park; it only gives you permission if a space is available. Parking is monitored and patrolled towing is in effect throughout the year, including football Saturdays. Parking privileges may be revoked, restricted, and modified at the discretion of Buckeye Real Estate.

Parking permits will not be available until early August; information will be sent before the sale of permits begins. Towing is suspended for a short period of time while our residents pick up keys and get moved into their apartment-homes; the towing suspension does not exempt illegally parked vehicles and reserved parking spaces.

Please review the **Parking Rules and Guidelines here.**

**City Parking Permits for on-street parking:**

There are several blocks around the campus area that have limited parking via special city passes. ALWAYS be aware of any city parking signage on your street. Be advised that the governing of these street spaces is handled ONLY BY THE CITY. Parking permits may or may not be available for your address, at the city's discretion. If you would like to confirm that your address is eligible for a city permit, please contact City Traffic and Parking directly at: (614) 645-6400.

## 5.1 MOVE-IN MAINTENANCE...

If you are moving into a newly turned apartment (as opposed to a renewal lease or as-is lease), you can expect the unit to be painted, cleaned, and carpet cleaned. Some maintenance issues are addressed after residents have taken possession. Maintenance takes a bit longer in August and September due to the volume of requests. Please be patient with us! Report any emergency items immediately as those are the maintenance requests that will be handled first. Cosmetic repairs and non-emergency maintenance are completed on a priority basis.

Please adhere to the following guidelines so that we may offer the best possible service!

**Submit requests only once.** Please make sure to discuss any needed maintenance with roommates before submitting them to the online portal. This way we can avoid duplicate entries, which can slow us down significantly.

Keep in mind that we are very busy in the fall so most work requests will take longer than normal. Non-emergency and non-property threatening issues may take longer than our standard 48-hour turnaround. We do everything we can to provide service as quickly as possible.

**Utilizing your RESIDENT PORTAL is ALWAYS the quickest and most effective way to submit a request.** You can place multiple items on one request.

**The move-in inspection completed by you at the time of move-in is not a maintenance request.** Our maintenance department does not see these; therefore, all requests need to be submitted separately from the move in form.

## 5.2 EVERYDAY MAINTENANCE AND DAMAGES ...

We provide general and emergency maintenance services for all our properties. The easiest, fastest, and most efficient way to submit a maintenance request is to submit a request on your online portal. Please note submitting a maintenance request is waiving the 24-hour notice to entry as you are requesting us to come in to fix an issue as soon as we can. All things considered normal wear and tear are covered by BRE. If something simply breaks or malfunctions, we will take care of it, no worries! There are some repairs you may be charged for if they are directly caused by Lessees and their guest per your lease agreement. You can refer to our General Maintenance Guidelines here for more details about some common repair responsibilities and their cost. We also recommend asking our maintenance office questions if you are unsure if it is your responsibility and how to handle it. YouTube is also a great source for reference on minor repairs and maintenance tricks.

**Maintenance office hours are 8:30am – 5:00pm.** If we are closed, all property threatening emergencies should be called into our afterhours answering service. Emergencies include: no heat in freezing temperatures, no water, break-ins/broken windows and or doors that leave the apartment unsecure, lockouts, water or gas leaks, or any other property threatening or life safety issues.

**Contact Information**

Submit Maintenance Request through your Resident Portal (The fastest and most efficient way)

Maintenance office (614) 448-3902

After-hours emergency answering service (614) 448-2543

### *6.1 EXTERIOR USE OF PROPERTY...*

Be aware that City of Columbus Code Enforcement officers conduct weekly walks of the properties in the university district. To ensure our properties comply with city code and our exterior policies, our office also inspects our properties on a regular basis. Any trash and/or city or lease violations found on the properties will be cleaned up/removed at the resident's expense.

City Code Violations vary from a couple of cans/solo cups in the yard to egregious party trash. Please do your part to ensure that any and all party trash, etc. is cleaned up immediately to avoid these violation notices. If you notice trash around your dumpster area, please put a work order in via your online portal.

**IF YOUR EXTERIOR AREA IS FOUND IN VIOLATION OF THE LEASE FOR EXTERIOR APPEARANCE AND USE, THE ITEMS WILL BE REMOVED AND DISPOSED OF AT THE RESIDENT'S EXPENSE.**

COMMON VIOLATION ITEMS:
Interior/inappropriate furniture on the porch or yard area (this includes folding tables and wooden tables)
Bike(s) chained up to the exterior of the property (this will often cause damage to the handrails/areas that they are chained onto)
Trash bags and/or party trash or debris on the porch or exterior of the property
Fire pits and/or chimeneas on the property
Twinkle lights/strings of lights hung and/or wrapped around the exterior of the property

It is not our intention to prohibit the use of appropriate patio furniture, please feel free to contact julie@buckeyerealestate.com if you have specific questions as to the list of permitted items. Please see the attached list of guidelines and ensure that your exterior area adheres to these guidelines AT ALL TIMES.

We want you to have an enjoyable experience during your college career; however, we also want to be good neighbors to the rest of the community. As Buckeye Real Estate residents, we expect you to treat your apartment home and community with respect and behave with a level of responsibility and maturity that is warranted by an adult living independently.

**Porch, Patio, Balcony, and Exterior Appearance**
Residents are encouraged to enjoy any porch, patio, balcony and lawn areas that are available to them, however, we ask that these areas be kept clean, picture ready, and not used for personal storage. Personal belongings should be properly stored inside the apartment, or any storage areas made available for that purpose. **Living room furniture is never permitted on porches per city code enforcement.**

*Appropriate items are:*
Plastic resin type chairs designed for exterior use (these are to be kept neatly stacked when not in use)
Furniture intended for patio use

*Inappropriate items include:*
Bicycles
Pools/Hot tubs
Beer Pong/Die Tables (including folding tables and wooden tables)
Tiki torches or other flammable decorations
Upholstered furniture, tables and/or furniture designed for interior use
Kegs and/or party debris
Garbage cans/garbage bags
Twinkle lights/String lights (we will allow tasteful holiday displays between Thanksgiving Day and New Year's Day)
Banners of any kind

# *7.1 UTILITY INFORMATION...*

**Utility billing must be transferred into your name within 2 business days of getting keys! Failure to do so will result in a failure to transfer fee for each bill BRE has to pay on your behalf in addition to the bill being added to your Resident Portal.**

It is always a good idea to contact the utility companies a few weeks before your plan to take occupancy of your new apartment home. Especially since some companies get backlogged at certain times of the year. This way, you can schedule billing to begin on your move-in date and will have one less thing to worry about when moving in.  Listed below are the phone numbers of local utilities that you may need.

## GAS:

**Columbia Gas 1-800-344-4077**

You will need the following when you first call:

Address (of where you are starting gas service) | Name (of the lessee the service will be under) |Name of any additional lessee you want authorized to call regarding the account | Social Security Number (of the lessee the service will be under) |Date you want billing in your name to start (lease start date or immediately if you are taking over for someone on an active lease)

They may ask to do a credit check.  Based on the credit check you may need to do the following:

Write down account #: _____. | Security deposit (send to them, they will tell you how) |Remit requested items (normally a driver's license and social security card, make sure to provide the account #, address and your name)

CALL BACK to verify that they have everything once you have sent all the information and paid the security deposit.

## ELECTRIC:

Please call American Electric Power first and ask if they service the address, you are placing electric service into.  If they do not service your address, then call City of Columbus – Division of Electricity.

| **American Electric Power (AEP) 1-800-277-2177** | **City of Columbus – Division of Electricity 614-645-8276** |
|---|---|
| You may need the following when you call: | You may need the following when you call: |
| Address (of where you are starting electric service) | Address (of where you are starting service) |
| Name(s) (of the lessee the service will be under) | Name (of lessee the service will be under) |
| Social Security Number (of the lessee the service will be under) | Social Security Number |
| Date of Birth | Driver's license number |
| Employment information | Employment/ Income information |
| Date you want billing in your name to start (lease start date or immediately if you are taking over for someone on an active lease) | Date you want billing in your name to start (lease start date or immediately if you are taking over for someone on an active lease) |

## WATER:

If you are responsible for water, the amount due for water usage will be billed to your portal.  This bill is payable via your portal and can usually be included with your rental payment.

## MOVE-OUT:

**\*\*\*\*Utilities cannot come out of your name for any reason before your lease ends without permission from the accounting department in writing. When your lease end date approaches, please make sure you call the respective utility company to take utility billing out of your name for the lease end date. Make sure you tell them you just want to take the billing out of your name effective on your lease end date (Do not mention anything about cancelling or transferring service as they will think you will want to cancel our master account). You should be able to do this online as well. We recommend doing so 1-2 months in advance for standard move outs. If you are the only one leaving a unit and the utilities are in your name, please make sure another person that is staying on lease puts the billing into their name on the same day you take it out to avoid interruptions in service and additional charges if we receive and pay bills on your behalf.**

## 8.1 IMPORTANT PHONE NUMBER (PRINT THIS! HANG THIS ON YOUR FRIDGE-IT WILL BE VERY USEFUL) ...

**Emergencies**: (After Hours Only)                614-448-2543

(This if for no heat, no water, water leak, etc. property threatening emergencies AFTER HOURS only!)

**Maintenance Office**:                614-448-3902

(Best to enter all maintenance issues and requests through the portal first)

**Leasing Office**:                614-294-5511


**Fax Number**:                614-299-3754


**Hound Dog's Towing**:                614-462-0729


**Fire Department**:                614-221-2345


**Columbus Police (non-emergency)**:                614-645-4545


**AEP (electric)**:                800-277-2177


**City Electric**:                614-645-8276


**Columbia Gas**:                800-344-4077


**Spectrum**:                614-481-5050


**City Parking:**                614-645-6400

| Leasing Office Hours*: | Contact Us: |
|---|---|
| Monday - Friday: 9am to 5pm | Email:  leasing@buckeyerealestate.com |
| (Closes every weekday from 12pm-12:30pm) | Address: 34 W. 9th Ave. Columbus OH, 43201 |
| Saturday: 11am to 3pm | Website: buckeyerealestate.com |
| Sunday: Closed | |
| * Hours subject to seasonal availability | |

## 9.1 RESIDENT REWARDS - BRE PERKS...

**Rewards For You**

We wanted to come up with some ways to make your experience living with Buckeye Real Estate more rewarding. We have partnered with some amazing businesses and restaurants to create our Resident Rewards program, Buckeye Real Estate Perks aka BRE Perks.

**What is BRE Perks?**

Our partnering businesses and restaurants have created deals and discounts exclusively for you. You will be able to take advantage of these perks by downloading the rewards app and following the instructions for the deals you would like to redeem.

More partners are planned to be added over the course of the program. You can stay up to date and see all the deals that will be presented by our wonderful partners here https://perks.buckeyere.com/.

**How Do I Get BRE Perks?**

Each resident on lease will be eligible to access BRE Perks for the duration of your lease term. You will receive an email within 2 weeks of your scheduled move-in date with instructions for how to download the app and sign up to your Perks account. Instructions for redeeming each perk will be available once you are signed up.

\*\*All deals, perks, discounts, method, and number of redemptions are subject to the terms set by our partners and may change at their discretion anytime. Perks can be cancelled at any time and are not guaranteed for the duration of any lease\*\*

## 9.2 SIGN AND ACKNOWLEDGE...

*Chinmayee Priyadarshini*
_____  2/22/2025
LESSEE SIGNATURE                                               DATE

*Suriyaa Valliapan Ramanath*
_____  2/22/2025
LESSEE SIGNATURE                                               DATE

*Muhammad Zubair Hittam*
_____  2/22/2025
LESSEE SIGNATURE                                               DATE

*Prasanna Lakshmi Oruganti*
_____  2/22/2025
LESSEE SIGNATURE                                               DATE

_____  _____
LESSEE SIGNATURE                                               DATE

_____  _____
LESSEE SIGNATURE                                               DATE

_____  _____
LESSEE SIGNATURE                                               DATE

_____  _____
LESSEE SIGNATURE                                               DATE

_____  _____
LESSEE SIGNATURE                                               DATE

_____  _____
LESSEE SIGNATURE                                               DATE



## NEW LEASE ACKNOWLEDGEMENT

34 W. 9TH AVE. ● P.O. BOX 8310 COLUMBUS, OHIO 43201 ● **PHONE:** 614-294-5511 ● FAX: 614-299-3754 ●
**EMAIL:** leasing@buckeyerealestate.com ● **WEBSITE:** buckeyerealestate.com

### 1.1 PLEASE ACKNOWLEDGE THE FOLLOWING

- I confirm receipt of my Buckeye Real Estate new lease packet, which answers many Frequently Asked Questions regarding my lease, including the schedule of rent payment for my contract and the ACH payment information.
- I consent to have the copy of my lease AND a copy of Protect Your Family From Lead In the Home posted to my resident portal.
- I acknowledge that I have viewed the specific Buckeye Real Estate unit that I am renting today and understand that the Lessor is unable to 'reshow' the apartment-home to my roommates or myself once the unit has been rented. Any arrangements for future viewings will be made directly between myself and the current occupants of the property.
- I acknowledge and understand that all lessees must return a co-signer (or prepay last month's rent, whichever we have chosen to do) **NO LATER than two business days** after each lessee signs the lease agreement. I further acknowledge that if we fail to return ALL the required documentation, that Buckeye Real Estate will charge our account the Last Month's Rent Deposit (equal to the monthly rental payment) and will collect in no later than the 15th of the following month.
- I understand the general parking guidelines for my building. I understand that I must follow the parking guidelines at all times. I further understand that any cars parking improperly are subject to towing at the vehicle owner's expense and that the office will monitor the parking areas during the move-in period.

| _Chinmayee Priyadarshini_ | 2/22/2025 |
|---|---|
| LESSEE SIGNATURE | DATE |

| _Suriyaa Valliapan Ramanath_ | 2/22/2025 |
|---|---|
| LESSEE SIGNATURE | DATE |

| _Muhammad Zubair Hittam_ | 2/22/2025 |
|---|---|
| LESSEE SIGNATURE | DATE |

| _Prasanna Lakshmi Oruganti_ | 2/22/2025 |
|---|---|
| LESSEE SIGNATURE | DATE |

| _____ | _____ |
|---|---|
| LESSEE SIGNATURE | DATE |

| _____ | _____ |
|---|---|
| LESSEE SIGNATURE | DATE |

| _____ | _____ |
|---|---|
| LESSEE SIGNATURE | DATE |

| _____ | _____ |
|---|---|
| LESSEE SIGNATURE | DATE |

| _____ | _____ |
|---|---|
| LESSEE SIGNATURE | DATE |

| _____ | _____ |
|---|---|
| LESSEE SIGNATURE | DATE |

| _____ | _____ |
|---|---|
| LESSEE SIGNATURE | DATE |

# _ Buckeye Real Estate Lease Agreement

## Audit Log

**Document e-signed by CHINMAYEE PRIYADARSHINI - akbchinmayee@gmail.com**

*Chinmayee Priyadarshini    CP*

Signature Date: 02-22-2025 - 06:49 PM UTC

IP Address: 65.24.228.71

**Document e-signed by Suriyaa V. Ramanathan - 0305.suriya@gmail.com**

*Suriyaa Valliapan Ramanath    SVR*

Signature Date: 02-22-2025 - 06:42 PM UTC

IP Address: 24.106.153.250

**Document e-signed by Muhammad Z. Hittam - malikhittam@gmail.com**

*Muhammad Zubair Hittam    MZH*

Signature Date: 02-22-2025 - 06:42 PM UTC

IP Address: 65.24.240.246

**Document e-signed by Prasanna L. Oruganti - orugantiprasanna3@gmail.com**

*Prasanna Lakshmi Oruganti    PO*

Signature Date: 02-22-2025 - 06:44 PM UTC

IP Address: 24.106.153.250

**Document e-signed by Justin Garland - justin@buckeyerealestate.com**

*Justin A. Garland    JAG*

Signature Date: 02-27-2025 - 07:10 PM UTC

IP Address: 24.106.153.250

**Document completed**

02-27-2025 - 07:10 PM UTC

